UNITED STATES, Appellee

v.

ALBERT J. WILLIAMS, Private E-1,
U. S. Army, Appellant

5 USCMA 197, 17 CMR 197

No. 4624

Decided November 26, 1954

Lt Col James C. Hamilton, U. S. Army and Capt Glade F. Flake, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, and 1st Lt Paul D. Heyman, U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge.

This case is before us on a petition submitted by accused to review his conviction for stealing $1655.00 belonging to his unit and some of its members. An Army general court-martial found him guilty of larceny in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715, and imposed a sentence of dishonorable discharge, total forfeitures, and three years' confinement at hard labor. The findings and sentence were approved and affirmed by intermediate appellate authorities. We granted the petition in order to pass on the question of whether the law officer erred in his procedure and instructions on the mental capacity of accused at the time of the trial.

Accused was a member of a battery of an Armored Field Artillery Battalion located in Korea. At about 5:00 p.m. on July 14, 1953, he began drinking Japanese beer and continued to do so until midnight when it occurred to him to steal the funds secured in the battery safe. He took a flashlight from his tent, walked to the gun pit of a Howitzer to which he was assigned, and got a pair of pliers. Then he went to the orderly room, cut a chain securing the safe, and carried it to the enlisted men's latrine. He cut the hasp in half with the pliers, removed the money, and disposed of the safe. He left the battery area and headed for Seoul, having decided to take the money and spend it while there. He was thwarted in his objective by the fact that the area was surrounded on three sides by a stream which was swollen to flood proportions from recent rains and on the fourth side by the enemy. He failed in a number of attempts to cross the water, and so decided to remain in the area. In the meantime the theft had been discovered, and a muster had been held from which accused was conspicuously absent. The commanding officer of the battery had ordered a search for both the safe and the accused, and since the safe was the repository for money belonging to a number of the enlisted men, it can well be understood why accused's return to his unit did not go unnoticed. He was taken to the orderly room where he was questioned and his belongings searched. The missing money was found in his raincoat pocket, and he later signed a confession in which he related the details of the theft.

The theory of the defense was that the accused lacked the necessary mental capacity to stand trial ■ and that the charges should, therefore, have been dismissed. Accordingly, after arraignment, but before entering a plea, defense made a motion to dismiss the action on the grounds that accused did not possess sufficient mental capacity to understand the nature of the proceedings against him and intelligently to conduct or cooperate in his defense.

While we reach the merits of this controversy, we again call attention to the inappropriateness of a motion to dismiss the specification and the charge. The Manual for Courts-Martial, United States, 1951, paragraph 67d, mentions a motion to dismiss the proceedings during the trial on the grounds of lack of mental capacity at the time of trial but we interpret that to be a discontinuance of the hearing and not to be a dismissal of the action. The proper motions to avoid confusing procedure and issues should be for a continuance or stay of proceedings. United States v. Lopez-Malave, 4 USCMA 341, 15 CMR 341. If either of those motions is interposed, the confusion flowing out of mixing a ruling on an interlocutory question with a finding on the merits is avoided. In addition, if the mental incapacity is permanent, or, not being fixed, does not improve in a short span of time, the convening authority is left unfettered in disposing of the litigation. On the other hand, if the condition is bettered he may order trial to proceed.

Defense evidence in support of the motion to dismiss consisted of expert testimony from four psychiatrists and one doctor, all of whom had examined the accused. The substance of their testimony was to the effect that he had an intelligence quotient of 53, which is in the lower one and one-half per cent of the population; that he could not do so simple a task as mopping a floor without supervision; and that, at the time of trial, he did not possess sufficient mental capacity to understand the nature of the proceedings against him and intelligently to conduct or cooperate in his defense. It does not appear that any change had occurred in the mental status of accused from the commission of the offense up to the time of trial although the medical testimony was to the effect that he was legally sane at the time he committed the offense.

In opposition to the testimony for the accused we find the evidence of eight officers and enlisted men from his unit who had known and worked with him and whose testimony, summarized generally, was to the effect that he com-

**201**

pleted the ninth grade in school, shot dice intelligently, played Whist, read magazines, and performed satisfactorily the duties of ammunition corporal which required the selection of rounds and fuses, the setting of the fuses, and the selection of correct powders for the appropriate ranges.

At the conclusion of the evidence on accused's mental capacity, the law officer denied the motion for dismissal without objection from any member of the court, and the trial proceeded on the merits. The facts of the offense as related in the first portion of this opinion were established by the prosecution with only a token defense being raised. After the taking of evidence was completed, the law officer instructed the court-martial as required by the Code and he touched on mental capacity at time of trial, mental responsibility at the time of the offense, presumption of sanity and burden of proof. The court was then closed and the verdict of guilty was soon returned.

The error alleged by accused is that the instructions given by the law officer were inadequate. We do not find them prejudicial; but before discussing their alleged deficiency, we believe it advisable to amplify our previously expressed views on the procedural requirements on the issue of insanity. In United States v. Lopez-Malave, supra, we considered one phase of the problem, but it is apparent further consideration is in order. There we said.

"In line with that requirement of the Code, when the motion was presented, the law officer should have weighed the evidence and made a determination as to accused's capacity to cooperate in his defense subject to objection by any member of the court. The law officer ruled on the motion but we are certain he did so under the impression that the issue would be before the court-martial on final submission. Had an objection been raised, then the court-martial should have been instructed on the issue and an interlocutory finding recorded. If the court-mar-

tial determined the accused sane, then the Government could proceed with the trial and regular trial tactics and procedure would be in order. If the court-martial found the accused unable to participate in his defense, then the record should be forwarded to the convening authority for further proceedings."

In this instance we have an attempt by the law officer to follow the Manual provisions, but it is doubtful that he was entirely clear on how the issues should have been processed. We shall, therefore, attempt to clarify further the procedural steps desirable when disposing of the issue.

Article 51(b), 50 USC § 626, provides as follows:

"The law officer of a general court-martial and the president of a special court-martial shall rule upon interlocutory questions, other than challenge, arising during the proceedings. *Any such ruling made by the law officer' of a general court-martial upon any interlocutory question other than a motion for a finding of not guilty, or the question of accused's sanity, shall be final and shall constitute the ruling of the court; but the law officer may change any such ruling at any time during the trial. Unless such ruling be final, if any member objects thereto, the court shall be cleared and closed and the question decided by a vote as provided in article 52,* viva voce beginning with the junior in rank." [Emphasis supplied.]

The first sentence of the italicized portion of the Article indicates that the finding of the law officer on a question of accused's insanity is not final. The second sentence suggests that if a member does not object then finality is accomplished by the ruling. The provisions in the Manual argue in support of that interpretation. In that connection it should be pointed out that when the issue is raised during the trial, the Code does not differentiate between the procedure to be followed in disposing of the defense of insanity at the time of the commission of the offense and the

bar imposed by insanity at the time of the trial. However, it is certain that accused's lack of sanity in the latter instance would prejudice his preparation and submission of a defense, and unless he is sane trial proceedings should be stayed. There is no substantial reason to proceed with a hearing if an accused's mental condition prevents him from assisting his counsel, and there are many which support an abatement of the proceedings. It is enough to mention that he might not have the mental capacity to make known information which would establish his innocence. For that reason alone, it is desirable to dispose of mental capacity at the time of trial before entering upon the merits of the case. To do otherwise results in mixed concepts and confused court members.

Paragraph 57d of the Manual is informative and it furnishes the following helpful information on the procedure to be used when insanity is raised as an interlocutory question:

"*Rulings by the law officer.*—(1) *General.*—A ruling by the law officer on an interlocutory question other than on a motion for a finding of not guilty or the question of accused's sanity, being final so far as concerns the court, no repetition of the ruling is necessary. However, any question as to whether a ruling of the law officer is conclusive shall be determined by the law officer. Rulings by the law officer on a motion for a finding of not guilty (71a) and on the question of the sanity of an accused (122b) are final unless objected to by a member of the court. When proper objection is made to a ruling of the law officer on these two matters, he may give the court such instructions as will better enable the members to understand the question they are to determine and the manner in which it is to be determined. Thereafter the court will be closed and the question decided by a vote of the members of the court. The law officer shall not be present while the court is closed to deliberate or vote."

Because various quotations in the Manual make mention only of the ruling of the court on certain interlocutory questions, it is necessary to look to paragraph 57b to understand that it was not intended by using the word "court" to modify the rule applicable to rulings which do not terminate the proceedings. That paragraph provides:

"*Applicability of this paragraph.*— This paragraph (57) applies to all interlocutory questions arising during the proceedings in open court (i.e., to all questions other than the findings and sentence) except the question of whether a challenge shall be sustained. Any statement or indication in this Manual to the effect that a certain question should be decided by the court is not to be understood as making an exception to the foregoing rule. See, for example, 53, 54, 55, 58, and 137."

Paragraph 57 is captioned "Interlocutory Questions Other Than Challenges" and when consideration is given to the explanation made in subparagraph b, it makes reasonably clear that in some instances the word "court" is used interchangeably to mean law officer or, when an objection is filed, then the court members. When the wording of the Manual and the wording of the Code are construed together, it becomes certain that if the law officer's ruling on mental capacity at the time of trial is not objected to, then it is the ruling of the court and no further consideration of the question is necessary unless the law officer elects not to have his ruling considered as conclusive. Here he elected to pass the responsibility for a final ruling to the court-martial.

In outlining our views on the preferred procedure, we will first discuss insanity at the time the offense was committed as the law officer determined it was raised reasonably by the evidence. This issue obviously blends in with the question of guilt or innocence. Ordinarily, it need not be considered more than once and that is when the court-martial members are deliberating on the ultimate findings. The Manual in paragraph 67e states that if

a motion raises a contested issue of fact which should properly be considered by the court in connection with its determination of the accused's guilt or innocence, the introduction of evidence may be deferred until evidence on the general issue is received. However, the motion may be considered as an interlocutory question and, if so, then there will be a dual submission. If reached on an interlocutory basis, the law officer rules first, subject to an objection by any member. If there is no objection, his ruling should dispose of the preliminary question, and trial should proceed if his ruling is adverse to the accused. If any objection is noted, the court should be instructed properly on the narrow issue then involved and care should be exercised not to confuse the finding then to be made with the later findings on the merits. Ordinarily, the test for insanity, the burden of proof, reasonable doubt, and similar items will be the same in both instances, but the percentage of votes will vary. It is difficult to forecast the best method of going forward as the nature and extent of the evidence will undoubtedly control the decision. A matter should not be twice submitted if once will do. However, the law officer has the necessary discretion to determine the method to be followed; and if presenting the evidence on the substantive offense will consume a considerable period of time, while the introduction of testimony on insanity will take a much lesser period, then time and effort might be conserved by a preliminary ruling. Regardless of the method selected, the important matter to be remembered is that an interlocutory ruling by the court, if objected to, requires instructions fitted to that issue, while different instructions are demanded when the cause is submitted on its merits.

We pass on to insanity at the time of trial as this seemed to cause the law officer the most difficulty. ▉▉▉▉▉ ▉ This is always an interlocutory ruling as it, standing alone, is not a final ruling on the merits. Under the provisions we have previously quoted, the law officer's ruling is final unless objected to. However, if the court-martial members are to per-

form their task of objecting or not objecting to the ruling with some degree of intelligence, they should have some assistance from the law officer. We, therefore, believe that after the law officer announces his ruling and before he asks if there is any objection, he should give certain instructions to the court. While the Code is silent about his duty in that regard, the Manual prescribes that he may give the court members such instructions as will better enable them to understand the question they are to determine and the manner in which it is to be determined. To do so makes sense, as it is of little value to permit the court members to overturn his decision when they have been given no standards by which to measure his ruling. Certainly the better practice is for the law officer to instruct the members in essence as follows: That the issue presented is whether the accused possesses sufficient mental capacity to understand the nature of the proceedings against him and intelligently to conduct or cooperate in his defense; that he must be able to comprehend rightly his own status and condition in reference to such proceedings; that he must have such coherency of ideas, such control of his mental faculties, and such power of memory as will enable him to identify witnesses, testify in his own behalf, if he so desires, and otherwise properly and intelligently aid his counsel in making a rational defense; that his mental capacity at the time of trial is different from that involved in determining mental responsibility at the time of the commission of the offense; that lack of mental responsibility at the time of commission of the offense constitutes a defense to the crime charged, while the lack of mental capacity to stand trial does not; that once the issue is raised, the burden to establish sanity is on the Government; that there is no requirement that the accused prove he lacks such mental capacity; and depending upon the ruling, that if any member does or does not entertain a reasonable doubt as to mental capacity, he should object to the ruling.

If an objection is lodged by a court

member, much of the foregoing must be restated or, by refer- ence, made a part of the final instruction to be given the members. In addition, they should be informed substantially as follows: that initially the accused is presumed sane, and the effect of the presumption should be explained; that if, in the light of all evidence, a reasonable doubt exists as to the mental capacity of the accused to understand the nature of the proceedings against him and to conduct or cooperate intelligently in his defense, the motion should be granted (Cf. 44 CJS § 127, page 283) ; that if they are satisfied beyond a reasonable doubt the accused has the mental capacity to understand and do the things related above, the motion should be denied; that a majority vote is controlling; that a tie vote is a determination against the accused; and that the finding should be to grant or deny the motion or the relief sought.

While we have separated the two issues of insanity in our discussion, in this instance the law officer was faced with both, and he failed to isolate them properly. He elected to have them considered by the court-martial on final submission, and mixed concepts found their way into his instructions. We believe that that is apt to happen if the law officer does not separate the two issues and dispose of mental capacity at the time of trial before he permits the case to reach the issue of mental responsibility. On those rare occasions when evidence of insanity is evident on the day of trial, late in the final phase that question can still be fully developed and a decision reached before the parties rest. When the case is finally submitted for a finding of guilt or innocence, only the issue of mental responsibility should confront the court members. In short, when insanity which merely bars proceedings is raised it becomes the first order of business, and other issues should wait until that one has been decided.

As may be gathered from the previous discussion, it would have been more appropriate in this proceeding for the law officer, after his ruling on the interlocutory question of capacity at the time of trial, to have given the court-martial members some guidance to assist them in arriving at a decision to, or not to, object to his preliminary ruling. However, any error in that regard was overcome by the subsequent proceedings.

The confusion, if any, occurred when the court-martial was instructed on the merits. It is doubtful that mental responsibility at the time the offense was committed was raised reasonably by this evidence. However, in an out-of-court hearing counsel for accused contended the court-martial should be instructed on both mental capacity and mental responsibility. The law officer, out of an abundance of caution and because he believed the provisions of the Manual were irreconcilable, yielded to the request and instructed on both.

The instructions on mental responsibility give us no concern, so we move on to consider the one on mental capacity. This is the instruction given:

"The court is instructed that during your deliberations you should *first* consider the provisions of paragraph 120c of the Manual found on page 200. Before you enter into your deliberations as to the guilt or innocence of the accused, the court is instructed, in this case you must decide whether or not the accused possesses sufficient mental capacity to understand the nature of the proceedings against him and intelligently to conduct or cooperate in his defense. This phrase should be given a reasonable interpretation. In the event the court decides that the accused does not possess sufficient mental capacity to understand the nature of the proceedings brought against him or intelligently to conduct or cooperate in his defense, then you should open the court and announce such findings as your determination. In which event, the record of trial this far, together with your determination, will be submitted to the convening authority for his consideration. Such a determination on your part under paragraph

120c does not constitute a final adjudication of the case. It is not equivalent to a finding of not guilty. The court is advised that my ruling Denying [sic] the motion of the defense on this point served only to deny the motion and should not be considered by you as a final adjudication of this question."

It is contended the instruction is deficient in that a more complete test ought to have been given; that ██ nothing is stated in regard to the burden to prove insanity at the time of trial; that reasonable doubt should have been mentioned as applying to mental capacity; and that the percentage of votes necessary to decide the question should have been mentioned. We can dispose of the first deficiency by calling attention to our oft-quoted rule that if amplifying or clarifying instructions are desired a request should be submitted by defense counsel. That rule which is announced in United States v. Day, 2 USCMA 416, 6 CMR 46, is applicable here. There we said:

". . . We believe there must be some burden borne by defense counsel and if terms are used which might require some amplification, there is a duty on defense counsel to request further instructions. Trial counsel, defense counsel and the law officer are present for the purpose of assisting in the proper presentation of the cause and each should assume some responsibility to assure that all issues are fairly litigated. Defense counsel can not sit by, do nothing to assist his client, and then have this Court reverse because of his delict."

See United States v. Soukup, 2 USCMA 141, 7 CMR 17; United States v. Felton, 2 USCMA 630, 10 CMR 128; United States v. Phillips, 3 USCMA 137, 11 CMR 137.

While we hold the instruction sufficient to meet minimal standards as to the test to be used in determining mental capacity, we believe in future cases an elaboration would be helpful, and to that end we call attention to the case of United States v. Chisolm, 149 Fed

284 (SD Ala), cited by both the accused and the Government in their briefs. There the defendant was charged with embezzlement and in the middle of the trial defense counsel stated that Chisolm was insane and unfit to aid his counsel in conducting a rational defense. He then requested that the trial be suspended in order that an examination of the defendant's mental condition might be made. The question was decided by a jury which heard testimony on the point, and, in charging the jury, the court paraphrased the test at three separate points in the following expressions:

". . . The question the court submits to you is whether the prisoner at this time is possessed of sufficient mental power, and has such understanding of his situation, such coherency of ideas, control of his mental faculties, and the requisite power of memory, as will enable him to testify in his own behalf, if he so desires, and otherwise to properly and intelligently aid his counsel in making a rational defense.

. . . . .

". . . The precise question you have here, as you understand, is to determine whether at this time the prisoner is in such possession of his mental faculties as enables him to rightly comprehend his condition with reference to the proceedings against him, and to rationally aid in the conduct of his defense.

. . . . .

". . . The real question is: Does the mental impairment of the prisoner's mind, if such there be, whatever it is, disable him, under the rules I have already given you, from fairly presenting his defense, whatever it may be, and make it unjust to go on with his trial at this time, or is he feigning to be in that condition, which, if true, renders him unfit to be kept on trial at this time?"

If the wording of the Manual is expanded by the tests used in that case, a much better formula is presented to the court-martial.

If the quoted instruction was the

206

only one given on the subject, then we would be required to hold ■■■■■■ that the accused had been prejudiced. However, all instructions on insanity must be considered and a careful reading of them leads us to conclude that even though they were not models of clarity, the court-martial members were fairly apprised that they could overturn the previous ruling of the law officer and that the reasonable doubt and burden of proof instructions found in other parts of the charge on insanity were applicable to both mental responsibility and mental capacity. There are two references to those principles found in other instructions and we are convinced the court-martial members would not restrict their scope to mental responsibility. That leaves only the percentage of votes, and unless the members concluded that two-thirds of those voting were required to overturn the ruling of the law officer, a very unlikely subject for consideration and determination in view of there being no objection to the original ruling, there could be no prejudice. Here again, had defending counsel believed the members might have been misled, he could have had requested amplification. In the light of the entire charge, we conclude there was no prejudice. Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring):

The approach of the principal opinion in this case is of particular significance because of its differentiation of mental capacity from mental responsibility in terms of the time at which the issue may be decided finally, and the voting percentage required for decision. Article 51(*b*) of the Uniform Code, 50 USC § 626, certainly does not make clear such a dichotomy.

On the other hand, in Federal practice an overt differentiation exists between the treatment of irresponsibility and that of incapacity. Of course, in each instance the accused need only raise a reasonable doubt of sanity. See United States v. Chisolm, 149 Fed 284 (SD Ala). However, under 18 USC § 4224—enacted in September 1949—a district judge is required to pass on mental incapacity and no jury trial is contemplated. See Jordan v. United States, 207 F2d 28 (CA DC Cir). The Federal statute quite clearly intends that the judge shall not submit the issue to the jury. See Weihofen, Mental Disorder as a Criminal Defense, 1954 ed, page 446. Federal courts had previously followed the common law practice, under which the judge might determine mental incapacity for himself—or could either submit it to the jury or utilize a commission. Indeed, it was open to him to direct the jury to decide the issue of incapacity along with that raised by the plea of not guilty. See United States v. Fore, 38 F Supp 140 (SD Cal). See also Weihofen, supra, page 456.

These last authorities manifestly support the procedure used by the law officer in the present case. Today about one-quarter of the state courts continue to permit the judge to exercise the discretion he enjoyed at common law. While approximately one-half of American jurisdictions have at one time or another divested the judge of his discretion as to method of determination, only eleven now retain the requirement of jury trial. See Weihofen, supra, page 445.

The current Federal practice—together with the trend of the law in the states—seems to support Judge Latimer's result, under which the decision of the law officer will, in most instances, determine the question. The distinction he takes between mental responsibility, on the one hand, and mental incapacity, on the other, may be sustained—despite their identical treatment in Article 51(*b*)—on the ground that irresponsibility is necessarily a question the members of the court must decide in reaching their ultimate findings.