UNITED STATES, Appellee

v

WALTER McCANTS, Private, U. S. Marine Corps, Appellant

10 USCMA 346, 27 CMR 420

No. 12,470

Decided April 17, 1959

*Commander John P. Gibbons,* USN, argued the cause for Appellant, Accused.

*Major George M. Lilly,* USMCR, argued the cause for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused stands convicted of the single offense of assault with a dangerous weapon, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. He was sentenced to be discharged from the service with a bad-conduct discharge, to forfeit all pay and allowances, and to be confined at hard labor for one year. Intermediate appellate authorities have approved both the findings and sentence, and we

**347**

granted review to consider three errors assigned by accused in his petition. Each asserted error, together with the facts necessary to place it in proper perspective, will be treated seriatim in this opinion.

I

The first issue raises the question whether the law officer erred to the prejudice of the accused by failing to instruct the members of the court-martial on the elements of the offense following his denial of a motion for a finding of not guilty. The facts shown by the Government which cast light on this contention are hereinafter summarized. The accused and the victim had been engaged in a game of poker, which ended with the victim owing money to the accused. Payment was refused on the basis that a prior debt owed by the accused offset the victim's losses. An argument ensued, and both men left the barracks and proceeded to the recreation hall. While there, the accused threatened the victim by stating, "When you wake up in the morning you will find yourself dead." The victim returned to his barracks, to be followed shortly thereafter by the accused, who entered carrying a .30 caliber M–1 rifle. As he proceeded toward the victim, the accused was observed taking a round of ammunition from his pocket and attempting to insert it in the chamber of the weapon. The rifle was pointed at the victim who, in an effort to protect himself, moved forward to disarm the accused. As he jumped toward the accused, the bolt was released, arming the weapon. In the ensuing scuffle, the hammer was tripped, but the weapon did not discharge. An onlooker obtained possession of the rifle and thereafter cleared it of the round by pulling the bolt to the rear.

Upon completion of the Government's case, the defense moved for a finding of not guilty upon the ground there was a discrepancy in the testimony of the victim in regard to whether the weapon was pointed directly at him. The law officer denied the motion subject to objection by any member of the court. No objection was registered by any court member, and the defense raised no point of order to the procedure but, after a short recess, proceeded with presenting its evidence. Accused complained for the first time upon appeal that the law officer erred by not instructing the members of the court-martial on the elements of the offense prior to calling for any objection to his ruling.

This alleged error has been before us on several occasions and while we have indicated it is preferable for the law officer to give appropriate instructions to the court-martial members before he asks if there is any objection, we have not gone to the extent of holding that the failure to do so was prejudicial to an accused when there was an affirmative showing that no member sought to challenge the ruling.

Article 51(b) of the Code, 10 USC § 851, provides as follows:

"(b) The law officer of a general court-martial and the president of a special court-martial shall rule upon interlocutory questions, other than challenge, arising during the proceedings. Any such ruling made by the law officer of a general court-martial upon any interlocutory question other than a motion for a finding of not guilty, or the question of accused's sanity, is final and constitutes the ruling of the court. However, the law officer may change his ruling at any time during the trial. Unless the ruling is final, if any member objects thereto, the court shall be cleared and closed and the question decided by a voice vote as provided in section 852 of this title (article 52), beginning with the junior in rank."

In United States v Williams, 5 USCMA 197, 17 CMR 197, in considering a similar question, we referred to the foregoing Article and to pertinent provisions of the Manual, then stated:

". . . Under the provisions we have previously quoted, the law officer's ruling is final unless objected to. However, if the court-martial members are to perform their task of objecting or not objecting to the ruling with some degree of intelligence, they should have some assist-

ance from the law officer. We, therefore, believe that after the law officer announces his ruling and before he asks if there is any objection, he should give certain instructions to the court. While the Code is silent about his duty in that regard, the Manual prescribes that he may give the court members such instructions as will better enable them to understand the question they are to determine and the manner in which it is to be determined. To do so makes sense, as it is of little value to permit the court members to overturn his decision when they have been given no standards by which to measure his ruling."

We are not disposed to retreat from that doctrine, but merely because the best practice was not used in this instance does not compel a holding that the accused was denied a fair trial or that he was prejudiced within the meaning of Article 59 of the Code, 10 USC § 859. Here the Government had clearly established the essential elements of the offense, and the motion made by defense pointed out there was a variance in the victim's testimony. Assuming without deciding that the record shows some inconsistency in details, whether the weapon was pointed directly at the victim or slightly to either side is incidental as the situation was fluid, the parties were not immobilized, and there would be some movement of the weapon. But more consequential, the court was not only aware of the claimed discrepancy but, after the accused had become a witness in his own behalf and denied arming the weapon and pointing it at the victim, the court returned a finding of guilty. That finding established that at least two-thirds of the court members were convinced when the Government rested that every element of the offense had been established beyond a reasonable doubt. Because of the posture of the evidence, it is fair to assume that, at the very worst for the Government, the same percentage of the court members would necessarily have voted to sustain the law officer's decision. A majority of the court must vote to reverse his ruling before it can be overturned, and it is obvious the required majority of the court would not have remained inarticulate when they were afforded a chance to speak, nor would they have voted to overrule the law officer on the same prosecution evidence which impelled them, under proper instructions, to find the accused guilty.

II

The second assignment of error asserts that the board of review used an improper standard in evaluating the evidence. In support of this assignment, the defense calls our attention to one statement found in the opinion which makes mention of the fact that it would not have been unreasonable for members of the court-martial to have interpreted the testimony to mean there was a round in the chamber of the rifle at the time the assault was committed. Standing alone, that statement creates the impression the board was using only an appellate standard, namely, some testimony to sustain the finding, in resolving the weight of the evidence. Conversely, there are other words and phrases which suggest that the board used the proper measuring rod. However, in reading the opinion within its four corners, we fail to find a clear impression of the evidentiary criterion used by the board, and the Government in the early stages of this appeal conceded ambiguity and petitioned the Court to return the record to the board of review for purposes of stating more clearly the basis of its holding. That petition was denied because other issues asserted by the accused raised the possibility that a rehearing might be necessary. Such an eventuality has now been eliminated, and we believe the interest of justice will be better served if the case is returned to the board for the purposes of clearing up the doubt. See United States v Moreno, 5 USCMA 500, 18 CMR 124.

III

The third assignment of error is founded upon an assertion that the accused was prejudiced by the fact that trial counsel testified on the merits and thereafter argued his own testimony. A short recitation of the relevant facts is necessary to give content to this as-

signment. To support his defense, accused called an expert on firearms as a witness. He had apparently conducted an experiment with the weapon which was used by the accused and testified a round of ammunition could not have been placed in the chamber of the rifle and then extracted without being marked. He then went on to explain that the mark would be a scratch on the copper jacket and the round of ammunition that was in evidence had never been extracted from the rifle because he had examined it closely with a magnifying glass and there were no markings. His testimony was in direct conflict with that of a witness who had testified he retracted the bolt and the particular round was thrown from the chamber.

After the defense had rested, the prosecution called as a rebuttal witness a lieutenant who had observed an experiment performed by trial counsel. He related the experiment but, in view of the fact that both officers were sworn and testified to substantially the same state of facts, we relate the testimony of the trial counsel. He testified he received the rifle and the cartridge—the two exhibits involved—approximately one-half an hour prior to trial and, in the presence of the aforementioned lieutenant, loaded the round in and unloaded it from the weapon. Particularly, he explained how he placed the round of ammunition on the follower of the rifle, permitted the bolt to go forward, pulled back the operating rod handle, and extracted the round from the chamber. This testimony constituted a direct challenge to the expert's contention that markings would be on the cartridge if it had been seated in the chamber and extracted.

In his closing argument, trial counsel commented as follows:

". . . Rebuttal evidence in the case indicates that it was impossible for this particular round to have been placed in this rifle. The expert on the stand testifies that marks would show up on the round. The expert examined the round and testified that there were no marks on it and that it absolutely was not in the chamber of that weapon and the only rebuttal

evidence that the government could produce for that is the fact that the trial counsel himself, prior to this witness examining the round today, did place that round in the chamber of that weapon and did pull it out and it was in there and we feel that that goes certainly to the credibility of the witness who will testify that in his expert opinion, not having been at the scene, he doesn't think that this round was in the chamber."

We, of course, look with disfavor on the procedure employed by trial counsel in the instant case. While  no fixed rule can be employed to fit all cases, unless it is absolutely necessary to a proper disclosure of the truth, no certified counsel should pit his credibility against that of other witnesses. It is apparent from our statement of facts that it was unnecessary for trial counsel to become involved, since it would have been feasible for the Government to have relied on the testimony of the lieutenant who witnessed the experiment. If corroborating testimony was considered necessary, any other member of the Marine Corps familiar with the operation of an M-1 rifle could have performed the experiment. However, it is one thing for us to inveigh against an undesirable practice, but it is another for us to hold it legal error which compels reversal. The fact that a person is counsel for a party in a criminal case does not disqualify him from becoming a witness. The general rule as to prosecuting attorneys is stated in 58 Am Jur, Witnesses, § 155, as follows:

"Prosecuting Attorney. — The prosecuting attorney is a competent witness to prove all facts or statements coming to his knowledge except confidential statements. An attorney at law assisting in the preparation and in the details of the trial is likewise competent, and a judgment will not necessarily be reversed because a witness-attorney is allowed to assist at the trial. However, some courts point out the impropriety of a prosecutor being a witness for the state and an advocate in the same action, on account of his liability to be prejudiced, and the difficulty of the jury in dis-

criminating between the evidence given under oath and that stated in the argument. And it has been suggested that when there are other counsel engaged in the case, the prosecuting attorney should withdraw when it is discovered that he is a necessary witness."

To support his contention, accused relies to some extent upon the case of Robinson v United States, 32 F2d 505 (CA 8th Cir) (1928). There, on petition for rehearing, two judges explained their concurrence in the court's original opinion. In the course of their presentation, they had this to say:

". . . No hard and fast rule can be laid down as to when it is permissible for a prosecuting attorney to become a witness against a defendant and remain as prosecutor. Circumstances might arise in the trial of a case making it necessary that the prosecuting attorney or his assistant become a witness, but these cases are few and exceptional. The function of a prosecuting attorney and a witness should be disassociated. A jury naturally gives to the evidence of the prosecuting attorney far greater weight than to that of the ordinary witness. Circumstances might exist where the prosecutor could not withdraw from the case. He might be the only attorney familiar with the case, and the only one engaged in the prosecution. The tendency of a situation where a prosecutor in a criminal case becomes a witness for the government is to prevent somewhat that fair trial to which a defendant is entitled. If this were the only question in the case, it might not be sufficient to warrant a reversal, but the practice of acting as prosecutor and witness is not to be approved, and should not be indulged in, except under most extraordinary circumstances."

If the answer to the question depended merely upon whether trial counsel used good judgment, then a reversal would necessarily follow, but it is to be noted that in the authority relied upon and quoted above, the court stated if the ethical issue was the only one involved, then reversal would not be re-quired. In that instance, the prosecuting attorney actively advised and counseled with those who were seeking to perfect a case against the defendant, and he became the principal witness. Here, we have quite a different situation and if we accept the rationale of that case, we are led to conclude an affirmance is in order.

Undoubtedly, an attorney may testify to any competent or relevant facts except those which come to his knowledge from confidential communications with his client. Here, there was no confidentiality and the testimony was only cumulative of evidence furnished by the second officer. There was no dispute about the experiment, and the court-martial members could, by inspection, ascertain the presence or absence of markings. Neither of the officer-witnesses testified on that matter. As a matter of procedure, pretermitting danger, the experiment could have been conducted in the courtroom in the presence of the court. Perhaps in his zeal trial counsel used an undesirable method of proving his point, but it was less effective than an in-court experiment. Be that as it may, so long as trial counsel is not incompetent as a witness by statute, or his testimony is not inadmissible under the accepted rules of evidence, an accused is not in a position to assert legal error merely because the prosecutor testifies and does not disqualify himself. Such a course may indicate poor judgment on the part of counsel, but that alone does not entitle an accused to a reversal, for the whole courtroom drama must be considered. In that connection, we note no objection was made to trial counsel testifying and, for all we know, had the defense raised the question of the prosecutor not conforming to professional standards of conduct, other avenues for producing rebuttal testimony might have been available to the Government. Considering the trial record as a whole and particularly that trial counsel furnished only cumulative testimony concerning an experiment about which there was no dispute and merely made a passing reference to it in his argument, we conclude the accused was not denied a fair trial. This assignment of error is, therefore, overruled.

**351**

For the reasons set forth in our discussion of the second issue, the decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Navy for reference to a board of review for action not inconsistent with this opinion.

QUINN, Chief Judge (concurring):

The Federal courts have strongly condemned the practice of the prosecuting attorney throwing "his own weight into the scales against the defendant" by testifying in other than "unavoidable" situations[1] or "under most extraordinary circumstances."[2] However, there was no objection by defense counsel. In my opinion, the improper procedure did not prejudice the accused. I agree with the principal opinion as to the other issues and I join in the disposition of the case.

FERGUSON, Judge (dissenting):

I dissent. As to the first issue, the court-martial members have been given by statute the right to object to a ruling of the law officer on a motion for a finding of not guilty. Article 51(b), Uniform Code of Military Justice, 10 USC § 851. This Court, as in United States v Williams, 5 USCMA 197, 17 CMR 197, cited by the majority, has indicated the importance of court members being given proper instructions to guide them in the performance of that duty. The majority, while adhering to that doctrine, has proceeded to render it ineffectual by a finding of no prejudice. In my view, if the court members are to intelligently determine whether or not to object to the law officer's ruling, they *must* be given appropriate instructions so that they can make an informed choice. I believe prejudice should be presumed where the court members are given no guidance in the performance of this duty.

I agree with the treatment of the second issue and the disposition it makes would be the proper one were that the only issue in the case.

The third assignment of error raises a serious question concerning the effect of the trial counsel testifying as a witness and thereafter arguing to the court-martial, in effect, that they should believe his testimony rather than that of the expert witness.

The authorities are generally agreed that the practice of a prosecuting attorney also participating in the trial as a witness is highly undesirable and looked upon with disfavor. See cases cited in Annotation, Footnote 2, 149 ALR 1305. Cf. Wigmore, Evidence, 3d ed, § 1911. And as the case cited by the majority notes, such a practice is permitted only under "most extraordinary circumstances." I can find no extraordinary circumstances in this case. As the majority admits, the experiment could have been performed by someone other than trial counsel.

Canon 19 of the Canons of Professional Ethics of the American Bar Association provides:

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

The Supreme Court of Wisconsin in Zeidler v State, 189 Wis 44, 206 NW 872, stated:

"But we must deplore the practice indulged by the district attorney in offering himself as a witness while he was in the active charge of the prosecution. This practice offends against the canon of ethics of the American Bar Association, which, we said in Roys v First Nat. Bank, 183 Wis at page 21, 197 NW 237, states ethical considerations which must appeal to every lawyer as being sound. If such practice is to be discouraged in a civil case, certainly it is to be deplored in a criminal case. A district attorney is a quasi judicial officer, and he should emulate the high-

[1] United States v Pepe, 247 F2d 838 (CA2d Cir) (1957).

[2] Robinson v United States, 32 F2d 505 (CA9th Cir) (1928).

352

est ethics of his profession. If he finds that the interest of justice requires him to testify in a criminal case, he should withdraw from the active prosecution of the case, . . ."

In the instant case, the trial counsel did more than testify in the case which, standing alone, would be objectionable because of the likelihood that the court members would attach undue weight to his testimony. Here, he created the evidence himself and then proceeded to testify on the only important and crucial issue in the case, i. e., whether the round could have been in the chamber of the M–1 rifle, thereby making it a dangerous weapon. Expert defense testimony was to the effect that the round had never been in the chamber of an M–1. In an attempt to discredit that testimony, trial counsel took the stand and testified that as an experiment he had placed the round in the chamber and then extracted it. His testimony, in my opinion, was not cumulative of the testimony of Lieutenant Stanton. Lieutenant Stanton was vague in his identification of the weapon and whether the round was in the chamber.

Not only did the trial counsel testify in the case and then continue as counsel, but in closing argument he stated:

". . . The expert on the stand testifies that marks would show up on the round. The expert examined the round and testified that there were no marks on it and that it absolutely was not in the chamber of that weapon and the only rebuttal evidence that the government could produce for that is the fact that the *trial counsel himself,* prior to this witness examining the round today, *did place that round in the chamber* of that weapon *and did pull it out and it was in there and we feel that that goes certainly to the credibility of the witness* who will testify that in his expert opinion, not having been at the scene, he doesn't think that this round was in the chamber." [Emphasis supplied.]

Thus trial counsel testified for the Government, presented its case, and then argued to the court-martial members that they should believe his testimony which would serve to discredit the defense's expert witness on the crucial point in the case. Such conduct goes far beyond a question of ethics and, in my view, is clearly prejudicial to the substantial rights of the accused.

Justice requires a rehearing. I would so order.