UNITED STATES, Appellee

v

CHARLES W. WHITACRE, Airman, U. S. Navy, Appellant

12 USCMA 345, 30 CMR 345

No. 14,622

Decided April 28, 1961

*Commander John S. Lane,* USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Eric L. Keisman,* USNR.

*Lieutenant John W. Boult,* USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Martin Drobac,* USNR.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

A special court-martial convicted accused for larceny of an oxygen mask and two violations of lawful general regulations, contrary to Articles 121 and 92, Uniform Code of Military Justice, 10 USC §§ 921 and 892, respectively. He was sentenced to a bad-conduct discharge and reduction. The convening authority and the officer exercising general court-martial jurisdiction approved, and a board of review in the office of The Judge Advocate General of the Navy affirmed. Thereafter, accused sought review by this Court and we granted his petition in order to consider three issues. The facts germane to the resolution of these questions may be set forth conveniently in the course of our discussion.

I

First we turn our attention to the question of the lawfulness of the search and seizure involved in this case. The record reflects that accused's name kept cropping up in the course of work by criminal investigators on other cases. Also, an anonymous telephone call had been received by their office indicating that accused improperly had Government property in his possession. On the particular day in question the investigators were searching the house of one Zander when an individual unknown to them walked in. Zander identified that individual as accused, and the investigators asked him to remain so they could talk to him when they had completed their task. After they had done so they repaired to their automobile where they warned accused of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831, and apprised him of their suspicions. When they asked him if he had Government property in his apartment, he responded in the affirmative. Thereupon the agents asked if he would permit them to search his dwelling, which was located in the civilian community, with-

346

out a search warrant. They made no threats or promises, nor was there any coercion or intimidation, and accused readily granted them permission. In addition, he voluntarily signed a written authorization consenting to a search of his premises by the investigators without a warrant, and the seizure of any Government property illegally in his possession. That document concluded with this statement:

". . . My constitutional rights to be protected against unreasonable search and seizure have been explained to me and I hereby waive such rights."

The agents then proceeded, with accused, to the latter's apartment. His wife was there and she cooperated with the investigators as they searched the premises and seized the items of property belonging to the Government.

The parties agree on the well-settled rule that searches made with freely given consent are lawful, and likewise there is no dispute over the principle that mere acquiescence or submission by a suspect in the face of apparent authority will not suffice to support a finding of true consent. See paragraph 152, Manual for Courts-Martial, United States, 1951; United States v Wilcher, 4 USCMA 215, 15 CMR 215, and cases therein cited; United States v Berry, 6 USCMA 609, 20 CMR 325. Appellate defense counsel assert, however, that the facts here fail to support a conclusion of consent for, they contend, there is no indication that accused was appropriately warned of his right not to consent and intelligently waived it. Rather, it is urged, he merely acted in response to the demands of law enforcement personnel.

When the facts are tested against the applicable law, it is crystal clear that the defense position cannot be sustained. No contention was made at trial that accused failed to understand his rights, nor that he was coerced by the demands of the investigators. And certainly the defense's failure to rely there on such a theory can be appreciated in light of the posture of the record. As we have noted in prior decisions, it is unnecessary to warn an accused in accordance with Article 31, supra, in order to obtain his consent to a search. United States v Insani, 10 USCMA 519, 28 CMR 85; United States v Cuthbert, 11 USCMA 272, 29 CMR 88. Neither do we understand the law to require that one must be advised of his right not to consent to a search without a warrant or its military equivalent, before a search so predicated may be found to be lawful. See United States v Wilcher, supra; United States v Hurt, 9 USCMA 735, 27 CMR 3; Ruhl v United States, 148 F2d 173 (CA 10th Cir) (1945). Both circumstances may, however, throw light on the question, and here the evidence clearly shows that accused was advised not only of his privilege to remain silent but also of his right to be secure against unreasonable searches, before he executed the written authorization. Cf. United States v French, 10 USCMA 171, 182, 27 CMR 245. Nor is it without significance that accused had already admitted—and after proper warning—that he had Government property in his abode before he gave the agents his consent to search. Having voluntarily admitted that much information, there is every reason to believe accused thought his agreement to a search would indicate he had the property innocently, whereas refusal might understandably arouse suspicion on the part of the investigators. See United States v Hurt, supra, at page 779. Moreover, the evidence shows the agents used no duress in obtaining accused's written consent, nor did they hold out the hope of preferential treatment. Rather, he freely and affirmatively granted permission and accompanied them to his apartment. And after their arrival there accused's wife exhibited a cooperative attitude, which gives additional color to the conclusion that the activities were with accused's agreement and not as a result of submission to apparent authority.

Manifestly, we must hold against accused on this issue, for when consideration is given to the foregoing facts and circumstances it cannot be said the evidence will not support a finding of consent.

**347**

## II

Another issue upon which we elected to hear argument is whether accused was prejudiced by certain actions on the part of trial counsel. Appellate defense counsel assert that trial counsel initiated the investigation of accused and the search of his apartment, participated in his interrogation, testified as a prosecution witness in support of a chain of custody of exhibits admitted into evidence, and instructed the court-martial on sentence after findings had been returned. They contend that these activities, individually and collectively, compel reversal of accused's conviction.

The trial counsel in this case, one Lieutenant (jg) Richmond, was, as the Government frankly concedes, assigned as the legal officer of his squadron. But the record does not bear out the defense position that in this latter capacity he initiated the investigation by sending agents to search accused's home. True it is that on cross-examination by defense counsel one agent responded in the affirmative when asked whether he had testified the search of accused's residence was initiated by the legal officer. However, it is quite clear that the answer merely refers to the agent's previous statement that when he had mentioned to the legal officer that accused's name kept cropping up in other investigations, Lieutenant Richmond "asked . . . if I would hold an investigation on [accused]." Accordingly, when the record is read in context, it is apparent that trial counsel as squadron legal officer was not privy to the search of accused's residence. To the contrary, the agents were in the city on a day subsequent to the conversation with Richmond, not for the purpose of searching accused's abode but to check on Zander. Only when accused unexpectedly appeared on the scene and they learned his identity did they question him, and not until he had admitted possession of Government property did they request his permission to search his house. Plainly that action on their part negates a holding that they searched as the result of a directive by trial counsel.

**348**

As to the other arm of this argument, the record does not bear out the complaint that trial counsel participated in accused's interrogation, which led to his pretrial admissions. To the contrary, the evidence shows without doubt that the agents interrogated accused and obtained his pretrial statement at the security department, and that Lieutenant Richmond was not present.

Thus the assertions of improper pretrial activity by the Lieutenant evaporate. He did not order or advise the search, but merely suggested an "investigation" of accused when he was made aware of alleged wrongdoing by him. He did not himself conduct or engineer any investigation nor did he participate in accused's interrogation. Hence, we reject the argument that he was disqualified under Article 27(a) of the Code, 10 USC § 827, to act as trial counsel at accused's court-martial. Cf. United States v Lee, 1 USCMA 212, 2 CMR 118; United States v Stringer, 4 USCMA 494, 16 CMR 68; United States v Schreiber, 5 USCMA 602, 18 CMR 226; United States v Patrick, 8 USCMA 212, 24 CMR 22.

With regard to the assertion that trial counsel testified as a prosecution witness, the record discloses that the items seized at accused's apartment were, at a subsequent time, taken to Lieutenant Richmond's office. He, in turn, took the stand and stated simply that the property had since remained there in his custody until the time of trial. Appellate defense counsel contend this activity was improper and prejudicial to accused.

In United States v McCants, 10 USCMA 346, 27 CMR 420, we inveighed against the undesirable practice of a prosecutor testifying on the merits and thereafter arguing his own testimony to the triers of facts. Nonetheless, considering the whole circumstances of that case, we concluded that, although the prosecutor may have been guilty of poor judgment in failing to disqualify himself, accused was not denied a fair trial. The same conclusion is required in the case at bar, for Lieutenant Richmond's actions could

not have had even the impact of those of trial counsel in *McCants*.

Here the prosecutor did not pit his credibility against that of any other witness. He merely stated he had taken custody of the items of Government property which were turned over to him. It was other evidence which indicated the items were the same articles seized at accused's apartment, for at the time they were taken from him identification tags written and signed by accused, and witnessed by one of the agents, were attached to each piece of property. The exhibits introduced had such tags attached to them, and they corresponded to the articles listed by accused in his pretrial statement as having been seized from him. While at trial the defense suggested the possibility that the tags may have been removed and placed on other articles, there was no evidence to support that speculation, and trial counsel's testimony did not bear on that remote contingency. Furthermore, in arguing on the merits, trial counsel did not attempt to capitalize on his own testimony. Rather, he simply commented that the proof showed a chain of custody from the time the agents recovered the articles from accused until they were offered in evidence.

In addition, we note there was no objection posed to trial counsel's testifying in this special court-martial. Perhaps that may be explained by the fact that defense counsel was not a lawyer but, we point out, neither was Lieutenant Richmond. Under those circumstances informalities are more apt to appear. Significantly, it should be noted that the *McCants* case was tried by a general court-martial, where counsel were lawyers, and certainly we are not disposed to hold a nonlawyer prosecutor to a higher standard of professional conduct than a certified attorney. And particularly would we be inconsistent to hold this accused was prejudiced when Lieutenant Richmond's activities—although not to be condoned —were even less controversial than those of his legally trained counterpart which we found to be nonprejudicial in

the last-mentioned case. Accordingly, we reject this arm of the defense argument.

The final contention urged by defense in support of this issue may be given short shrift. True it is that trial counsel advised the court-martial as to the limits on sentence and, under the decisions of this Court, he committed error by inviting attention to the penalties set forth in the Table of Maximum Punishments, which exceeded the jurisdictional limits for special courts-martial. See United States v Green, 11 USCMA 478, 29 CMR 294; United States v Crutcher, 11 USCMA 483, 29 CMR 299; and allied cases. The short answer, however, is that he is permitted to advise the court properly, and while his advice was incorrect both the officer exercising general court-martial jurisdiction and the board of review expressly recognized his error and reassessed accused's punishment, thus purging the sentence of any possible prejudice. United States v Crusoe, 3 USCMA 793, 14 CMR 211.

Accordingly, we must resolve this issue against the defense. Whether each facet of this alleged error is considered alone, or all are taken together, accused was neither deprived of a fair trial nor prejudiced illegally by trial counsel's actions. Article 59(a), Uniform Code of Military Justice, 10 USC § 859.

III

Last we look to the question of the sufficiency of the evidence to support accused's conviction for larceny of the oxygen mask. The board of review rejected this assignment and we need not dwell long on the issue. When all facts and circumstances and reasonable inferences therefrom are considered, it is apparent reasonable men could fairly conclude accused stole the mask. The evidence shows that such an article of United States property, of the value alleged, was seized at accused's home. In addition, accused admitted he had asported it from the station surreptitiously in a bag he falsely claimed contained personal property. Further, accused admitted—as indeed the Govern-

**349**

ment's evidence indicated—that the records reflected no oxygen mask was checked out in his name. Finally, the Government showed that during the same general period of time an oxygen mask had disappeared, was surveyed as missing, and was charged to a man in the squadron to whom it had been issued.

From those facts, reasonable men could conclude accused turned in one of two masks to clear his own property account, then with intent to deprive the Government of its property permanently, he clandestinely carried the other mask for his own use. Accordingly, we hold that the evidence supports the finding of guilty.

For the above-stated reasons, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.