UNITED STATES, Appellee

v

GEORGE W. STONE, Specialist Four,
U. S. Army, Appellant

13 USCMA 52, 32 CMR 52

No. 15,496

April 20, 1962

First Lieutenant Robert L. Brosio argued the cause for Appellant, Accused. With him on the brief was Captain Jerome D. Meeker.

Captain William E. Johnson argued the cause for Appellee, United States. With him on the brief was Major Francis M. Cooper.

FERGUSON, Judge:

Charged with absence without leave, in violation of Uniform Code of Military Justice, Article 86, 10 USC § 886, and four specifications of presenting false claims, in violation of Code, supra, Article 132, 10 USC § 932, the accused was found guilty and sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. Intermediate appellate authorities affirmed, and we granted accused's petition for review on two issues, one of which was raised by the Court.

The first issue before us involves the contention that:

"THE EVIDENCE IS IN LAW INSUFFICIENT TO SUPPORT THE FINDINGS OF GUILTY TO CHARGE II AND ITS SPECIFICATIONS."

The issue which the Court granted on its own initiative is:

"Whether Exhibits 3 through 17 were admissible."

The resolution of these questions requires that we examine the evidence in detail. The transcript of the proceedings reflects that accused absented himself without authority on March 2, 1961, at the end of a sixteen-day period of ordinary leave. He was apprehended on March 6, 1961, at Fairborn, Ohio, a place some distance from his station at Fort Bragg, North Carolina.

After receipt of duly authenticated extracts tending to establish the foregoing, trial counsel was sworn as a witness by the law officer. He testified that he had obtained a "Financial Data Records" folder from a Mr. Gorden, the personnel officer and "official custodian" of accused's records. Prosecution Exhibits 3 through 17 were various documents and vouchers pertaining to accused's pay account which had been removed from that folder. Trial counsel had "signed out" for the documents, "thus becoming the Custodian." He had no "training in the keeping of or the handling of" such records and could not state whether the documents were "true and complete." He did not "supervise the keeping of these documents." Over defense objection, the law officer admitted the exhibits in evidence.

Subsequently, Sergeant First Class Schuyler·N. Thomas appeared, was duly qualified as an expert on the auditing of Army pay records and Finance Office operations, and testified concerning the procedures utilized in making casual payments to Army personnel. Examining accused's pay records, included in Prosecution Exhibits 3 through 17, he stated that Stone would normally have been entitled to be paid $143.89 at the end of February 1961. However, on February 15, 1961, he received a casual payment of $50.00 from the Finance Officer, Wright Patterson Air Force Base, Ohio. And on the same date, he received a similar advance in the amount of $30.00 from the Finance Officer, Indianapolis, Indiana. Finally, on February 23, 1961, he was paid an additional sum of $50.00 by the Finance Officer, Fort Monroe, Virginia. Thus, after the last-mentioned payment, accused was authorized to receive as pay for the month of February only $13.89.

Other vouchers in the record nevertheless demonstrate that he received additional casual payments. Prosecution Exhibit 14 reflects a payment on February 27 by the Finance Officer, Richmond Quartermaster Depot, to Stone in the amount of $50.00. After receiving that sum, he was overpaid in the amount of $36.11. Prosecution Exhibit 15 establishes an additional payment of $50.00 on the same date at Fort Eustis, Virginia. Prosecution Exhibit 16 shows a casual payment of $75.00 on March 1, 1961, at Cincinnati Ordnance District, Cincinnati, Ohio, and Prosecution Exhibit 17 reflected a similar payment made at Wright Patterson Air Force Base, Ohio, on March 2 in the amount of $50.00. Accused had accrued no additional pay on March 1 or March 2.

Not all of the vouchers in question bore accused's signature in the block provided for acknowledging receipt of the payments. Sergeant Thomas ex-

plained that the absence of the signatures resulted from the fact that the vouchers were carbon copies forwarded for enclosing in the accused's file, the originals being retained at the Finance Center. Each copy, however, bore a notation by the particular Finance Officer indicating payment had been made.

Pertinent regulations, judicially noticed by the court-martial, provide that an individual cannot be paid casually unless he presents an acceptable identification card, a copy of the order authorizing his absence from duty or presence in the Finance Officer's area of responsibility, and establishes his entitlement to pay either through presentation of his pay records or by interview with Finance personnel.

We turn first to a resolution of the question whether Prosecution Exhibits 3 through 17 were properly received in evidence upon the basis that the trial counsel was their custodian, although he testified he had possession of the records only for the purpose of accused's trial. We note at the outset that no basis for waiver of the issue appears in view of the prompt and forceful objection of the defense counsel to the receipt of the documents in question.

The Manual for Courts-Martial, United States, 1951, provides a number of methods for the authentication of documents sought to be introduced in evidence. Manual, supra, paragraph 143b. The method sought first to be utilized here was testimony by one purporting to be the "custodian" that the records in question were regularly maintained in the accused's file. Our initial inquiry, therefore, is whether the trial counsel, by reason of his simple possession of documentary evidence, becomes its "custodian" for the purpose of authenticating such writings.

The Manual, supra, specifically defines the term "custodian" with respect to authentication of official records in the following manner:

"A custodian of an official record is *a person who has custody thereof*

*by authority of law, regulation, or custom, that is, a person in whose office the record is officially on file."* [Manual, supra, paragraph 143b.] [Emphasis supplied.]

The Manual provision was intended to adopt the civil rule "as to who may be considered a custodian of an official record." Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, pages 225, 226. Thus, it expressly states that such an individual is the person in whose office the record is required to be filed. There is no question that this "official custodian" is accused's unit personnel officer, identified in the record as Warrant Officer Gorden. Under pertinent Army regulations which the court-martial judicially noted, it was Gorden's duty to supervise the filing and maintenance of the "Financial Data Records" folder. Indeed, trial counsel so testified and disclaimed any responsibility for supervision of "the keeping of those documents" or any knowledge whether the file was "true and complete." He sought to predicate his "authentication" of the vouchers and records upon mere manual possession and the fact that he had obtained the folder from the personnel office. Possession alone, however, is insufficient to establish the exhibits as official records under the rule laid down in the Manual, supra. People v Darling, 120 Cal App 453, 7 P2d 1094 (1932).

We recognize the proposition has been asserted that a trial counsel is an "official custodian" of Government records and may authenticate them by sworn testimony of his manual possession. See United States v Desherlia, 22 CMR 686. An opposite conclusion seems to have been reached by Army tribunals. United States v Cazenave, 28 CMR 536.

The Government argues that this Court adopted the Navy practice under which the trial counsel is the "official custodian" of service records. United States v Johnson, 10 USCMA 630, 28 CMR 196. Language may in fact be found in that opinion which states that authentication of official records by a Navy trial counsel on the basis of mere possession is proper, as "the custom of

the Naval Service has clothed his office with being a legal repository of an enlisted man's service book." United States v Johnson, supra, at page 635. The statement is plainly dictum, and a majority of the Court concurred only in the result ultimately ordered. In short, the majority did not agree with the author Judge's reasoning, although it joined with him in concluding that the official document there involved was admissible in evidence.

While we do not agree that the *Johnson* case is authoritative precedent for the proposition that a trial counsel becomes an official custodian of records on the basis of mere manual possession, it clearly supports the ultimate admissibility of the exhibits in this record. There, as here, the prosecutor testified that he obtained the records in question from the office in which it was required to be kept on file by law. Indeed, in this case, the court-martial judicially noted the regulations which required Mr. Gorden to maintain accused's Financial Data Records folder in the personnel office. And while the trial counsel is not a custodian of such records, they may be equally authenticated:

". . . [B]y the testimony of any person, based on his personal knowledge, to the effect that the proffered document is a particular official record, or that the document is a true and exact copy of such official record, as the case may be." [Manual supra, paragraph 143b (2) (f).]

This provision was carried over from the Manual for Courts-Martial, U. S. Army, 1949. Its counterpart exists in the civilian sphere. Thus, Dean Wigmore observes an official record is admissible in evidence on the basis of the testimony of a private person "bringing the record into court and identifying it," or proving the document offered to be "a sworn or examined copy" of the original on file in the proper office. Wigmore, Evidence, 3d ed, § 2158. The important fact is that there be testimony from the authenticating witness that he obtained the record from the proper office and has "personal knowledge" it is an official

document. Wigmore, supra, page 628; State v Schaeffer, 74 Kan 390, 86 Pac 477 (1906) ; Smithers v Lowrance, 100 Tex 77, 93 SW 1064.

The last cited case involved facts strikingly similar to those now before us. There, a witness testified he went to the Land Office and had the Commissioner in charge point out to him certain relevant records. The witness examined and made true copies of these documents. The Supreme Court of Texas held it was error to exclude the copies, stating, at page 1065:

". . . There were numerous objections to the copies; the main objections being that the witness did not know they were the records, and the fact that they were pointed out by the Commissioner were mere hearsay evidence, and that in order for an examined copy to be admissible as evidence it must be made and testified to by the custodian thereof. Since it is the duty of the Commissioner of the General Land Office to keep his records open for the inspection of the public, we think it is to be presumed that a record pointed out by him as the record of the classification of lands in certain counties is the record he declares it to be. That the examined copy may be made and may be proved by any person competent as a witness in the case we think there can be no question. In Harvey v Cummings, 68 Tex 599, 5 SW 513, it was held that an examined copy of a decree of divorce was legally proved by a witness who was not the custodian of the record. . . . Mr. Greenleaf says (Ev. vol. 1, § 485), 'Where the proof is by copy, an examined copy, duly made and sworn to by any competent witness, is always admissible.' Why not admissible? The evidence is as satisfactory, certainly, as a certified copy. In the latter case we depend upon the honor and integrity of an official, and in the former upon the oath of a competent witness. In either case, an error or a fraud is easily detectable. Probably the reason why such a mode of proof has not been much

known, if known at all, in our practice, is that it is cheaper and handier to produce copies, and, if a witness comes instead, it is more satisfactory to have the officer who controls the records bring them into court. Therefore we conclude that it was error to reject the examined copy made by the witness Hamner on the — day of February, 1900. For the same reason we think it was error to exclude the copies of the records of the classification of the school lands in Kent and Garza counties, which were made by Hamner after the records were altered."

As noted above, the testimony of the trial counsel in the instant record clearly established that he went to the personnel office and obtained the accused's Financial Data Records folder from the possession of its official custodian, Mr. Gorden. Gorden was shown to have the duty of maintaining this folder —from which all the questioned exhibits were taken—on file in his office. See Army Regulations 37–104, paragraph 26–32(a) 13. Accordingly, we conclude that the evidence before the law officer was sufficient to permit him to conclude that the Government's exhibits had been authenticated as genuine official records.

Before leaving the issue, we desire to note one further matter. Time and time again, we have condemned the practice of counsel unnecessarily appearing as a witness in court-martial proceedings. United States v Gandy, 9 USCMA 355, 26 CMR 135; United States v Buck, 9 USCMA 290, 26 CMR 70; United States v McCants, 10 USCMA 346, 27 CMR 420; United States v Whitacre, 12 USCMA 345, 30 CMR 345. We have pointed out that testimony from counsel unfairly throws into the balance the credibility of an officer of the court. Moreover, unless it involves purely formal matters or is essential to the ends of justice, testimony by a lawyer on behalf of his client is improper conduct. Canon 19, Canons of Professional Ethics of the American Bar Association. We have stated our abhorrence of the practice, and this latest example causes us to suggest to the chief legal officers of the services that steps be taken to eliminate it.

Turning to the sufficiency of the evidence, we are certain the record before us is adequate in law to permit the court-martial to reach findings of guilty of the charges of presenting false claims against the United States, in violation of Code, supra, Article 132. Properly authenticated official records are *prima facie* evidence of the facts related in them. Chesapeake and D. Canal Co. v United States, 250 US 123, 63 L ed 889, 39 S Ct 407 (1919). When the exhibits here presented are considered in light of Sergeant Thomas' testimony, they establish that the accused, knowing that he was entitled to receive only $13.89 in pay at the end of February 1961, nevertheless presented claims for additional casual payments to various finance officers on February 27, March 1, and March 2 in the amounts, respectively, of $50.00, $50.00, $75.00, and $50.00. The records also indicate these claims were paid to him. While it is clear that more evidence could obviously have been produced, we are satisfied this proof was sufficient in law to permit the military jurors to infer guilt. United States v Reid, 12 USCMA 497, 31 CMR 83.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge KILDAY concur.