UNITED STATES, Appellee

v

BOBBY MOORE, Fireman Apprentice,
U. S. Navy, Appellant

8 USCMA 116, 23 CMR 340

No. 9731

Decided July 5, 1957

*Commander David Bolton*, USN, argued the cause for Appellant, Accused.

*Major Charles R. Larouche*, USMC, argued the cause for Appellee, United States.

Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused pleaded guilty to two specifications alleging housebreaking and two specifications charging larcenies, all in violation of the Uniform Code of Military Justice. While the maximum sentence for these combined offenses was some fifteen years and six months, with accessories, because this was a special court-martial proceeding the accused received a sentence of a bad-conduct discharge, confinement for six months, and partial forfeitures for that period. Before imposing a sentence, the court-martial was permitted to consider three of his prior service convictions, and the question which concerns us is the admissibility of four of the documents which were used to supply the evidence. There were in all

six documents introduced, and they consisted of one court memorandum and a supplemental page for each of the convictions upon which the prior courts-martial of the accused were recorded. They were marked for identification Exhibits 1 through 6, and, when offered, defense counsel stated he had no objection to their receipt into evidence. Four of the exhibits which involve two prior convictions are under attack, and the basis for their being assailed arises out of the fact that they were signed by a subordinate officer without reflecting that his signature was affixed by direction of the commanding officer. A board of review in the office of The Judge Advocate General of the Navy held the exhibits admissible and advanced alternative reasons to support its conclusion. In substance, they were that Naval regulations contained in the Bureau of Naval Personnel Manual did not require the command line entry on personnel records or, if they did, the presumption of regularity attending official records would support the conclusion that the executing officer performed his duty by direction of his commanding officer. The board accordingly affirmed the sentence as rendered and the findings, except as to one specification under the first charge, which was held to be legally insufficient and which was reduced to a finding that accused was guilty of a simple disorder.

Apparently because boards of review in the office of The Judge Advocate General of the Navy have reached contrary results in similar cases, The Judge Advocate General has certified the question to us for decision.

Articles B–2316 and B–2316A, Bureau of Naval Personnel Manual, provide in pertinent part that ▆▆▆▆▆ ▆ the original and all copies of the court memoranda with which we are concerned will be signed by the commanding officer or an officer designated by him to make such service record entries. Those articles go on to state that on the face of these memoranda the rank and official title of the officer signing shall be recorded and that it will be executed in conformity with Article B–2305(9). That article provides:

"The signature of either the commanding officer, executive officer, or other officer designated by the commanding officer, is required on each court memorandum (p. 6) and individual order to adjust pay account (p. 7), and after each entry in the leave record and the record of time not served (p. 8). The original and carbon copies of pages 6 and 7 must be signed. (Change No. 9.)"

The foregoing regulations, standing alone, would pose no reason to reject the introduction of the exhibits, but defense counsel calls our attention to Article B–2305(1), which provides:

"The purpose of signatures in the service record is to show that the entries are made by proper authority as represented by the person signing them. The signing of the service record also keeps the cognizant officer aware of the correctness of record maintenance and helps to guard against erroneous entries. It is therefore incumbent upon commanding officers to assure that service record entries are being signed only by authorized reliable personnel. The rank and title of the officer signing is required. (See art. 1608, U. S. Navy Regulations.)"

It is the cross-reference cited in the foregoing article which introduces some uncertainty in the record. Article 1608, United States Navy Regulations, to which reference is made, has a provision which must be considered in order to properly dispose of this issue. It is contained in the fourth numbered paragraph and provides:

"In official correspondence signed by subordinate officers for a senior, the words 'Deputy' or similar title, 'Chief of Staff,' or 'By direction,' as appropriate, shall appear below the signature of the subordinate officer, . . ."

In passing, it is worthy of note that Article 1601, United States Navy Regulations, defines "official correspondence" as follows:

"The term 'official correspondence'

**117**

as used in these regulations shall be construed to mean all recorded communications sent or received by a person in the Naval Establishment in the execution of the duties of his office."

The board of review saw no significance in the reference of Article B-2305(1) of the Personnel Manual to United States Navy Regulations, Article 1608, as quoted above. We take a contrary view, for, under the board's concept, the cross-reference would be an empty gesture and the definition of official correspondence would be greatly restricted. Therefore, we are impelled to agree with appellate defense counsel and hold that, when the regulations are construed as a whole, a subordinate officer making entries in court memoranda should indicate below his signature that he does so "By direction." We are fortified in that belief by scanning the forms found in the Bureau of Naval Personnel Manual. In every illustrated form therein set out, unless the entry is signed by an officer specifically authorized to do so by the Manual, the words "By direction" are shown.

That leaves for discussion the principle of whether the presumption of regularity can be relied ■ upon to establish the officiality of the exhibits. In United States v Masusock, 1 USCMA 32, 1 CMR 32, this Court gave voice to that principle. We there said:

". . . there is a presumption that the records emanating from official unit sources are the records required by regulation to be kept and that the person recording even though not shown as the commanding officer knew or had the duty to know or ascertain the truth of the facts or events recorded. Courts have long indulged in the legal presumption of regularity in the conduct of governmental affairs. United States v Pugh, 99 US 265, 271, 25 L ed 322, 324, — S Ct —; Johnson v United States, 225 US 405, 411, 56 L ed 1142, 1144, 32 S Ct 748. In the absence of a showing to the contrary, this Court must presume that the Army and its officials carry out their

administrative affairs in accordance with regulations and that morning reports reach the level of other official documents."

Civilian law is in accord with the foregoing rule, as may be evidenced by the following quotation from Lewis v United States, 279 US 63, 73 L ed 615, 49 S Ct 257. There the Supreme Court of the United States said:

"And even if it can be regarded as essential, under section 277 of the Judicial Code, that the judge should have given written direction to draw the jurors from part of the district only, still, as the contrary is not expressly shown, such a direction may be taken as sufficiently established by the presumption of regularity. See Steers v United States, 112 CCA 423, 192 Fed 1, 4. It is the settled general rule that all necessary prerequisites to the validity of official action are presumed to have been complied with, and that where the contrary is asserted it must be affirmatively shown. Nofire v United States, 164 US 657, 660, 17 Sup Ct Rep 212, 41 L ed 588, 590; United States v Royer, 268 US 394, 398, 45 Sup Ct Rep 519, 69 L ed 1011; and cases cited."

It is contended that the Masusock rule should not be applied in this instance because there the signing officer was a personnel officer and the duties were in his particular field, while here the officer was a legal officer. The rationale for that contention finds support in several of the board of review decisions cited by appellate defense counsel, which suggest that, since the legal officer is not normally charged with the function of making service record entries, the presumption of regularity cannot be applied in the absence of a recording that his authority derives from the commanding officer. To follow that line of reasoning to its logical conclusion, we would have to hold that an officer could clothe himself with authority to act by merely designating himself as personnel officer. Even in that instance, we must presume the officer was assigned to that position by

the Commander, for that is all that can be inferred from that designation.

For the purposes of the case, we may concede arguendo that it was not the normal duty of the legal officer to enter the data into accused's service record, but that is not decisive. By regulation, the commanding officer or the executive officer may assign available officers to the maintenance of records. Article 0803, United States Navy Regulations. No limitation of importance to this decision is expressed in any Naval regulation to the effect that officers assigned to one function, such as legal officer, shall not be detailed to the maintenance of records. It is a duty which must be assigned to some officer, and certainly, in many instances, officers, regardless of their primary duties, must be called on for a variety of tasks.

Recognizing that some Naval boards of review have decided that where officers are assigned to other duties, making entries in service records without entering express authority from the commanding officer denies the officiality of the record, we nevertheless adhere to the rule announced in Masusock, supra, that in the absence of any evidence to the contrary, the delegation of the authority is presumed. There would be little reason for an officer to make false entries, and the task of recording personnel data is not so desirable that it would likely be carried out by volunteers. Here, as in Masusock, we have the alternative of assuming that the commanding officer assigned the recording officer to the maintenance of accused's personnel file in this case or assuming that the officer arrogated to himself that function. We again choose the former as being within the realm of ordinary standards of conduct. We are not constrained one whit in this choice by the fact that the recording officer in this case was a legal officer. While, as appellate defense counsel asserts in his brief, there may be "dangers and evils inherent in such practices" that such a dual functionary will make entries in service records with a view to prosecution, there is no such showing with regard to the recordations made in this case; and on their face they reflect a fait accompli, not questionable entries recorded with an eye to prosecution. When, as here, there is not the slightest suggestion that the recording officer was not detailed to make the entries, we hold that they meet the tests of official documents. That holding answers the certified question in the affirmative—the exhibits were properly admitted into evidence. The decision of the board of review is affirmed.

Judge FERGUSON concurs.

Chief Judge QUINN concurs in the result.