UNITED STATES, Appellee

v

JAMES E. BROWN, Private E–2, U. S. Army, Appellant

8 USCMA 516, 25 CMR 20

No. 9715

Decided December 20, 1957

*Major Frank C. Stetson* argued the cause for Appellant, Accused.
*First Lieutenant Chester F. Relyea* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Richard W. Young*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused stands convicted of disobeying a lawful general order, in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892, and committing an assault in which grievous bodily harm was intentionally inflicted, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. We granted review to consider two questions regarding the first offense.

The order which the accused is charged with violating is described as a general order of Company A, 855th Engineer Battalion. The organization was commanded by a first lieutenant in the Corps of Engineers, and he issued the order as part of a "Standard Operating Procedure" for the whole company. The first question is whether a first lieutenant commanding a company has power to issue a general order.

In pertinent part, Article 92 provides that a person subject to the Uniform Code who fails to obey "any lawful general order or regulation," or "any other lawful order issued by a member of the armed forces" shall be punished as a court-martial may direct. In the Table of Maximum Punishments, the President established a maximum punishment for the offense. See Article 56, Uniform Code of Military Justice, 10 USC § 856; Manual for Courts-Martial, United States, 1951, paragraph 127c, Section A. The Table differentiates between a "general order or regulation" and "any other lawful order." The former carries the relatively severe penalty

of a dishonorable discharge, total forfeitures, and confinement at hard labor for two years; the punishment for the latter is limited to a bad-conduct discharge, total forfeitures, and confinement at hard labor for not more than six months. Therefore, the determination of the nature of a particular order has serious punitive consequences for an accused.

A definition of a general order is set out in paragraph 171a of the Manual. It says that a "general order . . . is one which is promulgated by the authority of a Secretary of a Department and which applies generally to an armed force, or one promulgated by a commander which applies generally to his command." As a matter of substantive law, the definition is not binding upon us in construing the meaning of the Code provision. For two reasons, however, it is a proper starting point for consideration of this case. First, it is a practical administrative interpretation, and, as such, is entitled to weight. See United States v Garcia, 5 USCMA 88, 17 CMR 88. Second, the President is authorized to prescribe the maximum punishment for an offense in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892. He has set out a separate punishment for a general order. Necessarily his definition of such an order is important.

Under the Manual definition, an order qualifies as a general order only if it is promulgated by either of two clas-

ses of persons, namely, the Secretary of an armed force or a commander. The Manual does not define a commander. Consequently, the Government argues that we should look to the service regulations for the definition. Army Regulations describe the officer in charge of a company or larger administrative or tactical unit as a "commander"; the person in charge of a unit smaller than a company is called a "leader." SR 320-5-1, paragraph 2, November 24, 1953. See also Dictionary of United States Military Terms for Joint Usage, Fourth Revision, February 1957, page 48. It would follow from this argument that, since the lieutenant in this case was in charge of a company, he was authorized to promulgate a general order. The argument, however, overlooks other important considerations.

The Manual lists only two classes empowered to promulgate a general order. One is at the top of the hierarchy of command in an armed force. If the Government's definition of a commander is accepted, the other class could be the lowest in the hierarchy and include enlisted personnel, if so defined by service regulation. In our opinion, the President did not intend to create such a situation. It seems █ to us that his specific joinder of the Secretary of a service with the term commander contemplates that the latter occupy a substantial position in effectuating the mission of the service. Consequently, the Manual definition argues against, not for, the view that the commander of minor and administrative tactical units have power to issue *general* orders, which would subject a violator to a dishonorable discharge, total forfeitures of pay and allowances, and confinement at hard labor for two years.

Another circumstance which militates against the possession of power to issue a general order by commanders of minor commands is found in the background of the Uniform Code. Article 92 was intended to apply to all the services. The Army and the Navy already had a history of use of the term "general order" before enactment of the Code. The Navy differentiated be-

tween a general order and a local order. The general order was one promulgated only by the Secretary of the Navy. Article 8(20), Articles for the Government of the Navy. An order issued by a local commander was not a general order, and a violation of such an order was punishable under Article 22, which provided generally for the punishment of other offenses not expressly listed in the Articles for the Government of the Navy. The frequency of the latter offense prompted Navy authorities to propose its delineation as a separate offense. See Proposed Articles for the Government of the Navy, Revised, June 30, 1945, Articles 4a(70)(71), Appendix B, page 39.

In the Army, the Articles of War did not, as did the Articles for the Government of the Navy, expressly distinguished between a general order by the Secretary of the Department and the order of subordinate commanders, but the practice was substantially the same as in the Navy. The Secretary of War promulgated as "general orders" directives intended for servicewide applicability. Lesser commanders sometimes designated their commandwide precepts as "standing orders" (See United States v Snyder, 1 USCMA 423, 4 CMR 15), but it was usual for Army commanders of major areas and installations to use the term "general orders" for directives applying to all members of their command. Army regulations in effect at the time of enactment of the Uniform Code classified orders into two main groups, routine orders and combat orders. AR 310–110, May 26, 1949, as supplemented by SR 310–110–1, May 26, 1949. The former classification was further subdivided as follows: General orders, special orders, letter orders, orders (detachment, company, or similar unit), general court-martial orders, special court-martial orders, bulletins, circulars, and memorandums. Of these, the general order was plainly authorized for use under normal conditions only by major commanders. True, the limitation was not expressly delineated, but the enumeration of the occasions when a general order could be used makes the limitation clear. In-

**518**

cluded in the enumeration, for example, were such matters as announcing the opening or the closing of a headquarters, announcing the personal staff of a general officer, or citing units for outstanding performance. SR 310–110–1, paragraph 18. On the other hand, the directives of a commander of a "detachment, company, or a battalion which is part of a regiment or similar unit" are described merely as "orders." Ibid., paragraph 73. In fact, the regulation expressly declared that "No other types of routine orders are issued by these units." The present regulation is to the same effect. AR 310–110A, paragraph 17. Moreover, the regulations provided for use of the term "general orders" only by a commander having general court-martial jurisdiction. AR 310–110, May 26, 1949, paragraph 1b (2)(a). To the same effect is the earlier regulation AR 310–50, July 30, 1948, paragraph 1b(2)(a).

In United States v Snyder, supra, page 429, we considered the general practice in the separate ▮ services before the Uniform Code. In passing we said that Congress intended "the term 'general orders' . . . (to be) synonymous with the previous term 'standing orders.' " The discussion which follows this statement, however, indicates clearly that the two types of orders are not always equivalent. We recognized that commanders of inferior commands could issue "standing orders" (see United States v Lane, 44 BR 169; United States v Wood, BR–JC 79), but we said that the term has been "consistently interpreted to include orders ranging from those issued by a Department down to those promulgated by the commander of a post, ship, or station." We thus limited the analogy between the "standing order" and the "general order" to the existing Army practice under which the Secretary of the Department and the major ▮ commanders promulgated general orders. In the light of the then existing practice, we

doubt that Congress intended to grant to all inferior commanders the same authority to promulgate general orders which had previously been reserved to the Secretary of a Department and to commanders of major commands. We hold, therefore, that the order in this case is not a "general order" but merely "another lawful order" within the meaning of Article 92 of the Uniform Code.

The second question before us is whether Footnote 5 of the Table of Maximum Punishments ▮ limits the punishment for ▮ the offense to that pro- ▮ vided for an unauthorized absence. See Manual for Courts-Martial, United States, 1951, paragraph 127c, Section A, page 221.[1] The order required all company personnel to sign a "pass sign-out book" before leaving the company area. The accused contends that if he violates the order, "a soldier could be considered as. AWOL." The best answer to this contention is that suspicion of an unauthorized absence is not proof of it. Evidence showing that the accused neglected to sign the book would not prove that he had no authority to leave the area. Cf. United States v Brown, 8 USCMA 18, 23 CMR 242. Even for administrative purposes, the failure to "sign out" does not establish an absent-without-leave status. AR 600–140, paragraph 5c, August 10, 1956. The order does not proscribe an offense for which punishment is provided elsewhere in the Table of Maximum Punishments. Cf. United States v Hammock, 8 USCMA 245, 24 CMR 55.

The decision of the board of review as to the sentence is set aside. The record of trial is returned to The Judge Advocate General of the Army for submission to a board of review for reconsideration of the sentence on the basis of a violation of a "lawful order" contrary to Article 92 and the findings of guilty on the assault charge.

Judges LATIMER and FERGUSON concur.

---

[1] "The punishment for this offense does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere in this table."