UNITED STATES, Appellant

v

LAYMON LEON OCHOA, Airman, U. S. Navy, Appellee

10 USCMA 602, 28 CMR 168

No. 12,952

Decided August 14, 1959

*Commander Louis L. Milano*, USN, argued the cause for Appellant, United States.

*Lieutenant Colonel E. W. Johnson*, USMC, argued the cause for Appellee, Accused.

## Opinion of the Court

HOMER FERGUSON, Judge:

Charged with failure to go to his appointed place of duty, absence without leave, using disrespectful language to his superior petty officer, failure to obey a lawful regulation, wrongful appropriation, and being disorderly in command, in violation, respectively, of the Uniform Code of Military Justice, Articles 86, 91, 92, 121, and 134, 10 USC §§ 886, 891, 892, 921, and 934, the accused was tried by special court-martial, and pleaded guilty to all charges and specifications save that averring wrongful appropriation. He was found guilty as charged and sentenced to bad-conduct discharge, partial forfeitures, and confinement at hard labor for four months. The convening authority suspended the execution of the punitive discharge and forwarded the record for appellate review. Thereafter, the board of review disapproved the findings of guilty of wrongful appropriation, disorderly in command, and failure to obey a lawful regulation, and reassessed the sentence. In its opinion and action, it noted that the regulation in question was promulgated by the Commanding Officer, Naval Air Technical Training Center, Memphis, Tennessee; concluded that such officer did not possess the authority to issue a lawful general regulation; and, as the specification did not allege the knowledge required under Code, supra,

Article 92 (2), determined that it set forth no offense. Following the board's action on the record, The Judge Advocate General of the Navy certified to this Court the following question:

"Does the Commanding Officer, U. S. Naval Air Technical Training Center, Memphis, Tennessee, have authority to issue a general order?"

The Government urges us to reverse the board of review on the basis of our decision in United States v Snyder, 1 USCMA 423, 4 CMR 15, wherein we upheld the validity of a lawful general regulation promulgated by the commanding officer of a Marine installation at Camp Lejeune, North Carolina. On the other hand, the accused argues that the board's decision should be affirmed and that the Code limits the issuance of lawful general orders and regulations to commands not inferior to theater or comparable level. While we believe that the correct interpretation of Article 92 (1), Code, supra, lies between the ultimate positions urged by the respective parties, we are sure that the defense is correct in its final conclusion that the commander involved herein did not possess the authority to issue a lawful general directive within the meaning of the cited Article.[1]

In United States v Snyder, supra, we

---

[1] We note that the specification in question alleges only that accused violated a "lawful regulation." The form specification in the Manual indicates that such a delict should be averred as a violation of a "lawful *general* regulation." (Emphasis supplied.) Manual for Courts-Martial, United States, 1951, Appendix 6c. But see United States v Snyder, supra. As the matter was neither briefed nor argued by counsel, we pass its consideration here.

loosely equated general orders and regulations to the "standing" or "local" orders which existed prior to the Code's enactment and stated that violations of these directives were punishable under Article 92(1), Code, supra. Cf. United States v Wade, 1 USCMA 459, 4 CMR 51. However, in United States v Brown, 8 USCMA 516, 25 CMR 20, we re-examined the language in the *Snyder* case and pointed out that it did not have the broad meaning now urged by the Government.

"In United States v Snyder, supra, . . . we said that Congress intended 'the term "general orders" . . . (to be) synonymous with the previous term "standing orders." ' The discussion which follows this statement, however, indicates clearly that the two types of orders are not always equivalent. We recognized that commanders of inferior commands could issue 'standing orders' . . . , but we said that the term has been 'consistently interpreted to include orders ranging from those issued by a Department down to those promulgated by the commander of a post, ship, or station.' We thus limited the analogy between the 'standing order' and the 'general order' to the existing Army practice *under which the Secretary of the Department and the major commanders promulgated general orders. In the light of the then existing practice, we doubt that Congress intended to grant to all inferior commanders the same authority to promulgate general orders which had previously been reserved to the Secretary of a Department and to commanders of major commands.* We hold, therefore, that the order in this case is not a 'general order' but merely 'another lawful order' within the meaning of Article 92. . . ." [Emphasis supplied.]

We thus laid down the rule that general orders and regulations, within the meaning of Article 92(1), Code, supra, could be promulgated only at departmental level or by major commanders.

We also pointed out that whether a command was "major" depended upon whether it occupied a substantial position in effectuating the mission of the armed services. United States v Brown, supra, page 518. In subsequent cases, we stated that possession of general court-martial jurisdiction was an indication that a command occupied such a position in the military or naval hierarchy. United States v Tinker, 10 USCMA 292, 27 CMR 366; United States v Keeler, 10 USCMA 319, 27 CMR 393. The presence or absence of that disciplinary authority is not, however, necessarily a controlling factor, for many highly important organizations leave this function to adminstrative commands which support them while, on the other hand, some units of minor significance possess it by virtue of Secretarial designation. Its importance lies in the fact that the exercise of such authority is some evidence the organization involved plays a substantial role in the defense of our Nation.

In view of the confusion which apparently exists in the services today concerning the authority to issue lawful general orders and regulations,[2] we have re-examined the question and reiterate our belief that the Uniform Code limits the promulgation of these directives to the service departments and major commanders. Article 92(1) is based on certain suggested amendments to the Articles for the Government of the Navy. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1227; Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, Conference 12e, page 258. Those amendments limited the issuance of general orders to the Secretary of the Navy. By the elimination of that restriction, we are sure that neither the drafters of the Code nor the Congress intended to permit all commanders at all

---

[2] See Meagher, "Knowledge in Article 92 Offenses—When pleaded, When proven?", 5 Military Law Review 119 (Department of the Army Pamphlet No. 27–100–5, July 1959), wherein the general question is discussed.

levels to issue general directives. United States v Brown, supra. The confusion which has arisen appears to have come from the Army's pre-Code practice of punishing the violation of all standing orders, regardless of the command level at which they were published, as conduct prejudicial to good order and discipline, in violation of Article of War 96, 50 USC (1946 ed) § 1568. United States v Byke, 1 BR-JC 215; United States v Patch, 7 BR-JC 89. As we indicated in the *Brown* case, we are certain the Congress did not intend to embrace all such derelictions within Article 92(1), Code, supra. For us to reach such a conclusion would render the second subsection of the Article completely superfluous.

In the light of the foregoing principles, the only question which we must now decide is whether the ▮▮▮▮▮ ▮ Naval Air Technical Training Center is a major command. A number of considerations convince us that it is not. The Commander in question possesses the grade of captain, and he does not exercise general court-martial jurisdiction. That authority is exercised over his personnel by the Chief, Naval Air Technical Training, an officer of flag rank, whose headquarters are also located in Memphis. The Center is but one of three similar schools charged with the mission of providing technical aviation education and training to naval personnel, and, as indicated in the Government's brief, "it is a number of steps removed from the Navy Department level." In short, it is no more that a service school. While its function is indubitably important to the maintenance of naval aviation, we are not convinced that it occupies a sufficiently substantial position in effectuating the Navy's mission to justify its designation as a major command. Hence, we conclude that its commanding officer lacked the authority to publish general orders and regulations. United States v Brown, supra; United States v Keeler, supra.

The certified question is answered in the negative, and the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

In my separate opinions in United States v Tinker, 10 USCMA 292, 27 CMR 366, and United ▮▮▮▮▮ ▮ States v Keeler, 10 USCMA 319, 27 CMR 393, I analyzed the decisions of this Court dealing with the issue at hand. From those authorities the rule is clear that an officer in command of a camp, post, or station, or his equivalent, has the authority to issue general orders within the purview of Article 92(1), Uniform Code of Military Justice, 10 USC § 892, while a commander of a company or comparable unit does not. At the least, our previous holdings have furnished those limits as to the commands which are or are not authorized to issue the orders, but, with the publication of this opinion, the ceiling is lifted and each case must be determined by a combination of criteria which no one knows. Rather than compound the confusion which has existed, I prefer to work within the designated bounds and, when I do, it appears clearly that the commanding officer of the installation involved had the authority to issue general orders. I would, therefore, answer the certified question in the affirmative and reverse the decision of the board of review.