UNITED STATES, Appellant

v

MILO H. JOHNSON, Seaman Recruit,
U. S. Navy, Appellee

10 USCMA 630, 28 CMR 196

No. 12,958

Decided August 28, 1959

*Major Ted H. Collins,* USMC, argued the cause for Appellant, United States.

*Commander David Bolton,* USN, and *Lieutenant W. L. Craig,* USN, argued the cause for Appellee, Accused.

GEORGE W. LATIMER, Judge:

I

On July 9, 1954, the accused unlawfully departed from his unit at the U. S. Naval Training Station, Great Lakes, Illinois. Over four years later, on August 1, 1958, he was apprehended and delivered to the Naval Air Station at Memphis, Tennessee, where he was subsequently tried by general court-martial for desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885. Upon his arraignment, the accused moved to dismiss the charge and specification, raising as a defense in bar of trial the running of the statute of limitations. In an out-of-court hearing, the law officer denied this motion and the accused was thereafter convicted and sentenced. The convening authority approved, but a board of review in the office of The Judge Advocate General of the Navy held that the law officer erred in denying the motion for dismissal; that the three-year statute of limitations provided for in Article 43(b) of the Code, 10 USC § 843, had run; and therefore that the conviction should be reversed and the charges dismissed. Thereupon, The Judge Advocate General of the Navy certified the record to this Court to review the decision of the board.

On May 3, 1956, slightly less than two years after accused had unlawfully absented himself, a charge sheet alleging his desertion was duly executed and forwarded together with a letter-order to the Potomac River Naval Command. The accompanying letter-order, a copy of which had been sent to the accused's last-known address, purported to transfer him from his former unit at Great Lakes to the Potomac Command. Receipt of the charges was indicated in the following manner upon the charge sheet:

"Headquarters, Potomac River Naval Command,
Designation of Command of Officer Exercising Summary Court-Martial Jurisdiction

Place Washington, D. C.
Date 7 May 1956
The sworn charges above were received at 1030 hours this date.
~~FOR THE COMMANDING~~

/s/ Mack K. Greenberg
Mack K. GREENBERG
Captain, U. S. Navy
District Legal Officer
Potomac River Naval Command
Signature, Rank, and Official Capacity of Officer Signing"

II

While we are confronted with a number of collateral arguments, the basic question underlying our determination is whether the receipt of charges as set forth above was in sufficient accord with the requirements of the Code and the Manual to effect a tolling of the statute of limitations. Article 43(b) of the Code, supra, provides in pertinent part:

"(b) Except as otherwise provided in this article, a person charged with desertion in time of peace . . . is not liable to be tried by court-martial if the offense was committed more then three years before *the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command.*" [Emphasis supplied.]

The italicized portion of the above-quoted Article is amplified by the following language from paragraph 68c, Manual for Courts-Martial, United States, 1951, which states in part:

"... For example, if it appears from the charges in a peacetime desertion case that more than three years have elapsed between the date of the commission of the offense and the date when sworn charges and specifications were received by an officer exercising summary court-martial jurisdiction over the command which includes the accused, the motion should be sustained unless the prosecution shows by a preponderance of evidence that the statute does not apply because of periods which, under the provisions of Article 43*d*, are to be excluded in computing the three years."

Assuming for the moment that accused was, at the time of the receipt of charges, a member of the Potomac River Naval Command—an issue we later decide—the defense contends that because Captain Greenberg, who was the District Legal Officer and a staff member who did not himself possess summary court-martial authority, signed the receipt, the charges were not received by "an officer exercising summary court-martial jurisdiction over the command." For the reasons which hereinafter appear, we reject the argument.

The summary court-martial convening authority in the instant case was Commandant of the Potomac River Naval Command, and there is no doubt he could delegate to a subordinate officer the authority to act for him in receiving charges. Actions of that sort are ministerial, requiring no exercise of discretion, and may be performed at the direction of the superior. That this function may be delegated is borne out by the language of paragraph 33*b*, Manual for Courts-Martial, United States, 1951, which provides in part:

"Immediately upon the receipt of sworn charges against a member of his command, the officer exercising summary court-martial jurisdiction will cause the hour and date of receipt to be entered in the space provided on page 3 of the charge sheet (app. 5),"

Moreover, the Naval service has so construed the provisions of the Manual for the printed part of the charge sheet (DD Form 458) itself contained the line "FOR THE COMMANDING" with a footnote below indicating that, "When an appropriate commander signs personally, inapplicable words are stricken out." A contemporaneous administrative interpretation is of some value in construing a regulation, and clearly the words printed on the form before the signature would be superfluous were the summary court-martial convening authority always required to sign the charge sheet personally.

While it is contended there is no showing of the delegation of authority by the Commander, in our early case of United States v Masusock, 1 USCMA 32, 1 CMR 32, we first applied the Federal rule of the presumption of regularity that attaches to military officials in the conduct of administrative affairs. There we noted in connection with morning reports that, although not signed by the commanding officer, the delegation of authority from him to the signing officer need not affirmatively appear in order to render such report admissible in evidence.

More recently in United States v Moore, 8 USCMA 116, 23 CMR 340, we were presented with a situation where a subordinate officer made certain court memoranda entries in the accused's service record without showing below his signature that he had done so "by direction." In that instance we went on to say:

"It is contended that the Masusock rule should not be applied in this instance because there the signing officer was a personal officer and the duties were in his particular field, while here the officer was a legal officer. The rationale for that contention finds support in several of the board of review decisions cited by appellate defense counsel, which suggest that, since the legal officer is not normally charged with the function of making service record entries, the presumption of regularity cannot be applied in the absence of a re-

**633**

cording that his authority derives from the commanding officer. To follow that line of reasoning to its logical conclusion, we would have to hold that an officer could clothe himself with authority to act by merely designating himself as personnel officer. Even in that instance, we must presume the officer was assigned to that position by the Commander, for that is all that can be inferred from that designation.

. . . . . .

"Recognizing that some Naval boards of review have decided that where officers are assigned to other duties, making entries in service records without entering express authority from the commanding officer denies the officiality of the record, we nevertheless adhere to the rule announced in Masusock, supra, that in the absence of any evidence to the contrary, the delegation of the authority is presumed. There would be little reason for an officer to make false entries, and the task of recording personnel data is not so desirable that it would likely be carried out by volunteers. Here, as in Masusock, we have the alternative of assuming that the commanding officer assigned the recording officer to the maintenance of accused's personnel file in this case or assuming that the officer arrogated to himself that function. We again choose the former as being within the realm of ordinary standards of conduct. We are not constrained one whit in this choice by the fact that the recording officer in this case was a legal officer."

In at least one respect our present case bears greater similarity to *Masusock* than did the *Moore* situation, for here a legal officer was performing a duty in that field, whereas in *Moore*, as the quoted language indicates, a legal officer performed duties relating essentially to personnel matters. This fact gives added weight to application of the rule that "in the absence of evidence to the contrary" the delegation of authority is presumed.

Appellate defense counsel argue that

the words "FOR THE COMMANDING," as crossed out on the charge sheet, provide evidence to the contrary and therefore we should not indulge in the presumption. Whether the language was crossed out deliberately or inadvertently is of little importance for common sense dictates that a commander need not personally sign the receipts for military correspondence and files. The important step in cases such as this is that the sworn charges be a matter of record in the headquarters. And the fact remains that Captain Greenberg was legal officer on the staff of the Commandant, and he so designated himself beneath his signature on the receipt. A staff officer does not command and only on legal matters where by statute he has been saddled with acting in his own right would United States Navy Regulations, 1948, Article 0510, not apply. That article provides:

"2. The officers of a staff shall be responsible for the performance of those duties assigned to them by the commander and shall advise him on all matters pertaining thereto. In the performance of their duties, they shall have no command authority of their own with respect to the remainder of the command, but shall at all times, in carrying out such duties, act for and in the name of the commander."

The same rule applies when a staff officer works with other commands for he only represents the commander. Therefore, as in the *Masusock* and *Moore* cases, our only alternative to a proper delegation of authority is an assumption that Captain Greenberg stepped out of his role as a staff officer and arrogated to himself the authority of a commander. In the absence of any indication more compelling than the crossed-out words on the charge sheet, we are unwilling to make such an assumption.

III

The only other question justifying comment is whether, at the time the law officer ruled on the defense motion to dismiss, he properly had before him

evidence of the accused's transfer to the Potomac River Naval Command. In answer to accused's objections on this point, trial counsel introduced an order from the Chief of Naval Personnel transferring accused "to the Commandant, Potomac River Naval Command for purposes of record and court-martial jurisdiction." Appellate defense counsel, relying on United States v Desherlia, 22 CMR 686, a Naval board of review decision, contend that this order was incompetent evidence and should not have been considered by the law officer. For reasons set forth hereinafter, we disagree with the rule of the *Desherlia* case and believe that the distinction made between official entries on the right and documents found on the left side of an enlisted service record is unwarranted.

In reaching its conclusion, the board of review in *Desherlia* held a trial counsel incompetent to authenticate documents taken from the left side of the record folder even though the board seems to indicate he could authenticate other portions of the record. The holding was founded on the theory that these writings "are not subjected by either law or regulation to a specific requirement that the truthfulness of the matters contained therein be known to, or ascertained by, the person who files such writings in the service record folder." The board went on to reason that:

"... the presumption of regularity which may attach to a genuine official record does not attach until the authenticity and genuineness of the document has been established in accordance with legal requirements pertaining thereto."

Specifically, it is this language which we believe the board misapplied.

It is well settled and we have held that an official document must be authenticated in the sense that it must be genuine and in all respects what it purports to be before it may be received in evidence. Paragraph 143b (2), Manual for Courts-Martial, United States, 1951; United States v Parlier,

1 USCMA 433, 4 CMR 25. However, we have not meant to limit authentication to the narrow sense applied by the board of review in *Desherlia*. The document involved is the original order emanating from the office of the Chief of Naval Personnel, and it was contained in accused's service record which was in the custody of trial counsel. The above-mentioned paragraph of the Manual provides that a custodian of an official record is a person who has custody thereof by authority of law, regulation or custom—that is a person in whose office the record is officially on file. Trial counsel was in possession of the record officially and, if he could qualify as the custodian for the right side of the service book, he was likewise qualified as custodian for the entire record. Assuming his possession is temporary, it is strictly for official purposes, and the custom of the Naval service has clothed his office with being a legal repository of an enlisted man's service book.

Article B 2301(2), Bureau of Naval Personnel Manual, requires that certain documents described in other specified articles be placed on the right-hand side of the enlisted service record. The language of this article then continues:

"... Other official documents or unofficial papers concerning the individual required for record or safe-keeping purposes shall be filed on the left-hand side of the service record folder. Such other official documents or unofficial papers include: standard transfer orders, ..."

Construing the above-quoted language in its literal meaning and in common ordinary usage, we conclude there is a duty placed upon the custodian of the service record to file standard transfer orders on the left-hand side therein. Moreover, under Article C 5403A, Bureau of Naval Personnel Manual, letter-type orders—the type of order with which we are here concerned— would be included within this class. We, therefore, conclude, that in handling this order regularity was shown.

**635**

This brings to the fore the officiality of the document.

In United States v Coates, 2 USCMA 625, 10 CMR 123, we used the following language which dictates our decision in the case at bar:

". . . When an 'official record' is offered in evidence, and it appears that it was prepared by a military person charged by regulation with the duty of doing so, it will be presumed that it was prepared in accordance with regulations, and by one who knew, or had the duty to know or to ascertain the truth of, the facts or events recorded. United States v Masusock, supra. If it can be shown that the data reported are inaccurate, or even that the source of the reporting officer's information was not 'reliable,' these are matters for the defense to bring forward."

In our present case, the letter-order was "prepared by a military person █ charged by regulation with █ the duty of doing so" and █ bore the "by direction" signature of a subordinate of the Chief of Naval Personnel. Parenthetically, we note the law officer could judicially note the genuineness of the signature. The accused was the addressee and the subject matter concerned his change in assignment, and there is not the slightest suspicion appearing in this record which would indicate the order was spurious. We are thus able to presume that the document was prepared by one who knew the truth and genuineness of the facts and events recited. Under such circumstances we conclude, contrary to the decision of the *Desherlia* case, that trial counsel, after stating under oath that he was the then custodian of accused's service record, was competent to identify the letter-order as having been taken from that book, and that at the time he did so there was more than adequate guarantee of its genuineness and authenticity. It follows therefore that the law officer had before him competent evidence of accused's transfer to the Potomac River Naval Command.

For the foregoing reasons, we hold that trial of the accused was not barred by the statute of limitations, and accordingly the certified question is answered in the negative. The decision of the board of review is reversed, and the case is remanded to The Judge Advocate General of the Navy for action not inconsistent with this opinion.

Chief Judge QUINN and Judge FERGUSON concur in the result.