**UNITED STATES**

v.

**Lawrence R. RICE, 527 78 8279, Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCM 82 1104.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 23 July 1981.

Decided 15 Dec. 1982.

CDR Matthew J. Wheeler, JAGC, USNR, Appellate Defense Counsel.

LT Mark A. Zuboff, JAGC, USNR, Appellate Defense Counsel.

LT Anita M. Fulton, JAGC, USNR, Appellate Government Counsel.

LT Sandra R. Ganus, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C.J., and GORMLEY and MAY, JJ.

PER CURIAM:

Tried by special court-martial without members, appellant was found guilty, contrary to his pleas, of two specifications of unauthorized absence in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. The military judge sentenced appellant to forfeit $300.00 pay per month for 6 months, to be reduced to the lowest enlisted pay grade, and to be separated from the Marine Corps with a bad-conduct discharge. That sentence was approved by the reviewing authorities below.

During an initial Article 39(a), UCMJ, 10 U.S.C. § 839(a) session, the defense moved to dismiss all charges and specifications as barred by the statute of limitations. Service record entries revealed that appellant had absented himself from his unit, Battery T, 5th Battalion, 10th Marines, 2nd Marine Division, on 18 September 1978, and on 18 October 1978 was declared a deserter and dropped from the rolls of that unit. The sworn charge was signed by the officer

exercising summary court-martial jurisdiction over 5th Battalion on 2 November 1978. Following appellant's apprehension and return to 5th Battalion on 8 May 1979, the mark of desertion was administratively removed from appellant's service record. On that same day, appellant again became an absentee and, again, was dropped from the rolls of 5th Battalion. An additional charge subsequently was endorsed by the officer exercising summary court-martial jurisdiction over 5th Battalion.

Appellant, both at trial and before this Court, submits that by first dropping him from the unit rolls of 5th Battalion, that command's subsequent attempts to toll the statute of limitations were rendered ineffective. The defense argued that having dropped appellant from the 5th Battalion rolls, that command no longer exercised summary court-martial jurisdiction over appellant; thus, the signature appearing on the third page of the charge sheet was a nullity under Article 43(c), UCMJ, 10 U.S.C. § 843(c). Although appellant raised that as a summary assignment of error, this Court requested supplemental briefs addressing,

> WHETHER MARINE CORPS ADMINISTRATIVE REGULATIONS BY WHICH A SERVICE MEMBER IS "DROPPED FROM THE UNIT ROLL" ESTABLISH A LEGALLY BINDING PROCEDURE, CONTRARY TO COMMON PRACTICE IN 2ND MARINE DIVISION, SUCH THAT NONCOMPLIANCE BY DROPPING THE MEMBER FROM THE UNIT ROLL PRIOR TO PREFERRAL OF CHARGES WOULD PRECLUDE A TOLLING OF THE STATUTE OF LIMITATIONS UNDER ARTICLE 43, UNIFORM CODE OF MILITARY JUSTICE.

Article 43(c), UCMJ, provides that the statute of limitations may be tolled through "receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command." Further amplification is found in paragraph 33, *Manual for Courts-Martial, 1969 (Rev.)* (MCM), which speaks of the "officer exercising summary court-martial jurisdiction over the accused" as a "member of his command." That language has been construed, *sub silentio,* as contemplating action by that particular summary court-martial authority under whose command an accused was attached at the time sworn charges were received. *See United States v. Johnson,* 10 U.S.C.M.A. 630, 28 C.M.R. 196 (1959); *United States v. Lemarbe,* 11 M.J. 864 (N.M.C.M.R.1981). The procedure envisioned in Article 43(c) is in sharp contrast to the mechanism for tolling the statute of limitations recognized under the former Articles of War. As noted at the time of the Code's adoption, Article 43(c) was

> considered preferable to the more indefinite provision in [Article of War] 39 that the statute is tolled "when by reason of some manifest impediment the accused shall not have been amenable to military justice."

Senate Comm. on Armed Services, S.Rep. No. 486, 81st Cong., 1st Sess. *reprinted in* Index and Legislative History, Uniform Code of Military Justice at 19 (1950).

Implementing the mandate expressed in Article 43(c), UCMJ, and paragraph 33, MCM, Marine Corps administrative directives stress the significance attaching to the command relationship between accused and his summary court-martial authority. Thus, the Marine Corps Individual Records Administration Manual, MCO P10070.12 (IRAM), cautions:

> As provided in the Uniform Code of Military Justice, article 43, and Manual for Courts-Martial, United States 1969 (Revised Edition), paragraph 68c, the responsibility for receipt of sworn charges and specifications sufficient to terminate the running of the statute of limitations rests with an officer exercising summary court-martial jurisdiction over the command. The latter is significant in connection with action in dropping a Marine from the rolls; once that action is taken, an officer exercising summary court-martial jurisdiction over the Marine's command is no longer empowered to terminate the running of the statute of limitations by the receipt of sworn charges and

specifications preferred against the Marine.

IRAM, par. 4001. Further guidance is provided in paragraph 4002(2) of the Marine Corps Legal Administration Manual, MCO P5800.8A (LEGADMINMAN), which directs that sworn charges should be receipted for by the officer exercising summary court-martial jurisdiction before the member is dropped from the unit rolls.[1]

As noted at trial, an individual removed from a unit's rolls as a deserter immediately falls within the administrative cognizance of Headquarters, Marine Corps (Code MPH–57). While 2nd Marine Division would retain the member's service record indefinitely, based upon storage constraints at Headquarters, Marine Corps, the original command has neither operational nor administrative control over the service member. Assuming the member's physical return to his prior unit, that command would regain administrative responsibility by message notification to Headquarters, Marine Corps. Where the sequence of actions is inverted and the member is dropped from the rolls prior to the receipt of sworn charges, the LEGADMINMAN provides a specific remedial procedure which contemplates preparation of the charge sheet by the Commandant of the Marine Corps, (Code MPH–57).[2]

All parties acknowledge that the proper procedures, as contemplated by Article 43(c) and implemented by Marine Corps directives, were not employed in the instant case. We are now asked to consider the legal significance, if any, arising from that administrative variance.

 It is well-settled that a Government agency will be bound by its own administrative regulations where the underlying purpose of those regulations is the protection of personal rights or interests. *United States v. Russo*, 1 M.J. 134 (C.M.A. 1975), citing *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970) and *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). Strict compliance will be required even where the regulations in question are designed, or may be construed, to benefit both the Government and the individual service member. Thus evidence seized through an oral search authorization was held to be inadmissible where obtained in violation of an Army regulation requiring that such authorizations be reduced to writing. *United States v. Dillard*, 8 M.J. 213 (C.M.A.1980). *See also United States v. Anderson*, 12 M.J. 539 (A.F.C.M.R.1981). The customary application of a regulation primarily concerned with procedures governing the organization and management of the agency

---

1. 2. *Administrative Instructions*
 a. Inventory and store in a secure place all government property and personal effects in accordance with the current edition of MCO P4400.19, MARCORSUPMAN, if not previously accomplished.
 b. Prior to dropping a Marine to desertion, prepare a charge sheet, DD Form 458, completing all information required on page 1; draft a charge and specification on page 2 alleging a violation of the UCMJ, Article 85 and all other known charges; and, complete the following on page 3.
 (1) Ensure that the charges are sworn to and the affidavit is completed.
 (2) Ensure that an officer exercising summary court-martial jurisdiction completes the receipt for sworn charges section.
 (3) Place the original charge sheet on the document side of the SRB.
 Ensure that a copy of the DD Form 553 is contained on the document side of the SRB. LEGADMINMAN, par. 4002(2).

2. g. *Service Record Book.* Under normal circumstances the SRB will be forwarded to the Commandant of the Marine Corps (Code MPH–57), on the first day of the 19th month of absence. See current edition of MCO P1070.12, IRAM, for exceptions to the above. Conduct a thorough audit of the SRB prior to forwarding to Headquarters Marine Corps.
 (1) If, upon audit of the SRB, it is discovered that the Marine has been dropped to desertion prior to having charge sheets prepared in accordance with MCO P1070.12, take the following action:
 (a) Ensure appropriate entries are on pages 3, 12 and 23 of the SRB.
 (b) Forward SRB by transmittal to the Commandant of the Marine Corps (Code MPH–57) requesting corrective action be taken in the preparation of charge sheets.
 LEGADMINMAN, par. 4002(2)(g).

will be accorded great weight by reviewing authorities. Nevertheless, that practical construction may not be dispositive where contrary to the underlying administrative purpose of the regulation. *See United States v. Phillips,* 19 U.S.C.M.A. 340, 39 C.M.R. 230 (1969); *United States v. Johnson,* 6 U.S.C.M.A. 347, 20 C.M.R. 63 (1955).

The Government suggests, in the instant case, that the applicable provisions in the Marine Corps IRAM and LEGADMINMAN are intended merely to promote administrative efficiency in the management of service records. As such, these regulations are not designed to benefit the service member or to afford any greater protection for personal rights. We find that position unpersuasive, in light of Article 43(c) and the literal language of the Marine Corps regulations cited. The reference in Article 43(c) to receipt of sworn charges by an officer exercising summary court-martial jurisdiction over the command implies a mechanism for tolling the statute of limitations. Yet clearly, Article 43(c), by its very terms, narrows the prosecutorial reach of the Government by establishing a two-year statute of limitations. The benefit accruing to the service member is obvious. The receipt of sworn charges by a particular summary court-martial authority merely provides a date certain from which the two-year period may be computed. Such an interpretation of Article 43(c) reflects the drafters' dissatisfaction with the far less precise procedure instituted under the Articles of War. *See* INDEX AND LEGISLATIVE HISTORY, *supra.* Assuming, *arguendo,* that Article 43(c) confers a benefit both on the accused and the Government, the requirement of strict compliance remains applicable. *Dillard, supra* at 213.

We find further support for our analysis in the cautionary language included in the applicable Marine Corps directives. Paragraph 4002(2) of the LEGADMINMAN provides explicit instructions designed to insure that the statute of limitations is properly tolled where a service member becomes an unauthorized absentee. The consequences flowing from a failure to implement those instructions in the proper sequence is highlighted in that portion of paragraph 4001 of the IRAM previously cited. Given the uncompromising position adopted by the Marine Corps' own directives, we find the Government's present argument rather incongruous.

By dropping appellant from the rolls of 5th Battalion, the summary court-martial authority apparently surrendered all administrative control over that service member. Removing appellant from the unit rolls provided 5th Battalion with the means for securing a replacement by attaching appellant to Headquarters, Marine Corps. The fact that appellant's service record was retained indefinitely by 2nd Marine Division or that appellant's reassignment to 5th Battalion was effected simply by message notification does not diminish the effect of initially dropping him from the unit rolls. Having removed appellant from the roster of 5th Battalion, 10th Marine Regiment, Marine Corps regulations precluded that command from tolling the statute of limitations. Marine Corps regulations so interpret the Code and we find such an interpretation wholly consistent with the language and spirit of Article 43(c). As noted in another context, "[m]odern judicial theory looks with favor upon statutes of limitations and they are liberally construed on behalf of an accused in furtherance of their manifest objectives." *United States v. Rogers,* 8 U.S.C.M.A. 226, 321, 24 C.M.R. 36, 41 (1957).

The Government's failure to properly toll the statute of limitations necessarily requires that we take corrective action. Accordingly, the findings and sentence are set aside and the charge and both underlying specifications ordered dismissed.