**UNITED STATES**

v.

**Timothy N. BREAULT, 025 58 7553, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 88 2705.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 18 Feb. 1988.

Decided 2 March 1990.

Maj J.B. Gilbert, USMC, Appellate Defense Counsel.

LT Daniel Dooher, JAGC, USNR, Appellate Defense Counsel.

LT Stephen Ponticiello, JAGC, USNR, Appellate Government Counsel.

Before the Court en banc.

FREYER, Judge:

The appellant was found guilty, in accordance with his negotiated pleas, of a two-day absence without leave, violation of a Camp Lejeune Marine Corps Base Order—alleged to be a general order—by wrongfully possessing and consuming an alcoholic beverage in a barracks, and as-

sault consummated by a battery upon another Marine "about the head and body with his body by tieing [sic] his arm to a chair, by punching and kicking him, by using a toilet brush to scrub boot polish and shaving cream in his face and by forcing his head into the toilet and flushing the toilet." After considering the appellant's record, which included nonjudicial punishment for a ninety-minute absence without leave from "appointed" place of duty and a special court-martial conviction for "willfully" stealing a $430.00 Kenwood car cassette tuner from the Army and Air Force Exchange Service on Okinawa, the military judge sentenced the appellant to reduction to pay grade E–1, confinement for 45 days, and a bad-conduct discharge. The convening authority, as he was entitled to do by the pretrial agreement, approved the sentence and, with the exception of the bad-conduct discharge, ordered it executed.

After announcing the sentence, the military judge asked the appellant if he had any questions regarding his post-trial or appellate rights, at which point the following colloquy occurred:

ACC: I have just one question, sir. They told me at the last court-martial that even though if I was to go up before another court-martial they couldn't use that special court-martial against me if I had fulfilled the agreement. They told me that they couldn't bring that back to me because I met my requirement not to get a BCD and it was suspended. That if I were to go up before another court-martial or something that they wouldn't be able to use that and if that wasn't in my record book, I don't think your decision would have been so harsh.

MJ: I regret to inform you that who ever [sic] told you that I could not consider your prior disciplinary record, specifically a prior court-martial, was in complete error. That is most assuredly something I can, will, and do consider and you're absolutely right, it most assuredly was a large part my decision [sic].

Are there any further matters that you would desire to present?

ACC: Not on my part, sir.

On the basis of the foregoing, the appellate defense counsel assigned the following error:

THE MILITARY JUDGE ERRED BY FAILING TO INQUIRE AS TO WHETHER THERE WERE ANY *SUB–ROSA* AGREEMENTS AFTER APPELLANT INFORMED HIM THAT HE WAS TOLD PRIOR COURT–MARTIAL CONVICTION COULD NOT BE USED AGAINST HIM IN SENTENCING RENDERING APPELLANT'S PLEAS IMPROVIDENT.

█ As noted by the appellate government counsel, the military judge did make such an inquiry during his discussion of the pretrial agreement prior to findings and received a response from the appellant to the effect that there were no other agreements between him and the convening authority than the written agreement then before the court. We find nothing in the post-sentence comments of the appellant to suggest the existence of any additional agreements in connection with the appellant's pleas at the instant court-martial, as distinguished from a unilateral misconception under which he may have labored as a result of having either received erroneous advice or misinterpreted correct advice from some unidentified source at the prior court-martial. There is no indication anywhere that the appellant's decision to plead guilty at the instant court-martial was conditioned on the supposed inadmissibility of the prior court-martial, evidence of which was admitted without objection, and, when given an opportunity to address the court further after the judge had responded to the appellant's statement, the appellant indicated that he had nothing further to say on the subject. In the absence of any request by the appellant to withdraw his pleas of guilty or to tie them in any way to inadmissibility of the prior court-martial conviction, we see no need for the military judge to have reopened the previous two-part inquiry, which had already yielded the responses that the agreement before the court was the entire agreement between the parties and that there were no other agreements.

By order of 16 February 1989, a panel of this court specified the two issues listed below, and, because of the considerable number of cases that might be affected by the resolution of the first specified issue, we voted, on 6 December 1989, to hear the case *en banc.*

I

WAS THE CHIEF OF STAFF AUTHORIZED TO SIGN A GENERAL ORDER, PORTIONS OF WHICH ARE DEEMED PUNITIVE IN NATURE?

II

WAS THE BAD–CONDUCT DISCHARGE AN APPROPRIATE PUNISHMENT UNDER THE CIRCUMSTANCES OF THIS CASE?

■ Taking the second specified issue first, we have noted from the trial exhibits the appellant's unimpressive proficiency and conduct marks, the two Page 11 counseling entries and stated reasons therefor, and his prior disciplinary record, all of which, in conjunction with the offenses of which he was convicted at the instant trial, in our considered judgment, amply support a sentence including a bad-conduct discharge.

In response to our first specified issue, the accused argues that commanders empowered to issue general orders must personally sign all directives as a prerequisite to their being held to be general orders. This is so, we are told, because issuing a general order or regulation is analogous to enacting a criminal statute, the power to do so being reserved to a relatively small number of senior officials, and because a prosecution for its violation requires no proof of knowledge and can result in a substantial punishment.

This appears to be a case of first impression, as no cases have been cited to us, and we have found none ourselves, which discuss the precise question raised by our specified issue. Before proceeding, however, we must ensure that the terminology used in our discussion is sufficiently de-

fined to eliminate ambiguities that would otherwise diffuse our holding.

As a starting point, we have judicially noticed provisions of the Department of the Navy Directive Issuance System (Secretary of the Navy Instruction 5215.1C, dated 14 April 1970). Part I, paragraph 1, defines ISSUING AUTHORITY as "[t]he chief official of an established, independent component, by whose authority and under whose title a directive is promulgated." Item 6.a in Table 1 of that instruction further defines the concept of the issuing authority. Item 13 of Table 1 explains the signature requirements for naval directives, indicating that, with exceptions not here material, the signature requirements are the same as those specified for naval correspondence in the Department of the Navy Correspondence Manual (Secretary of the Navy Instruction 5216.5A). (The current edition of that directive is Secretary of the Navy Instruction 5216.5C, dated 24 August 1983.) In accordance with Chapter 2, paragraph 17, thereof, we agree with the view expressed by counsel at oral argument that a signature over the functional title "Chief of Staff" subscribed to a directive bearing the issuing authority identification of a headquarters commanded by a flag or general officer is the equivalent of what, for most lesser staff officers, would be a signature "By direction," meaning "by direction of the Commander."

■ We briefly address two requirements of the Department of the Navy Correspondence Manual for personal signature of correspondence by the head of the activity: correspondence establishing policy or dealing with "certain aspects of military justice." Although policy may underlie certain general orders, the law is clear that, in order to be punitively applicable, a general order must purport to regulate individual conduct, not establish policy. *United States v. Nardell,* 21 U.S.C.M.A. 327, 45 C.M.R. 101 (1972); *United States v. Whitcomb,* 1 M.J. 230 (C.M.A. 1975). The Department of the Navy Correspondence Manual does not impose any special signature requirement on "correspondence" which *implements* policy, only that which

*establishes* it. Similarly, we construe the term "dealing with certain aspects of military justice" to include "correspondence" which is either adjudicative or dispositive in nature, such as an action of a convening authority, a supplementary court-martial order, or a commander's action on a nonjudicial punishment appeal, or that which states the commander's position on the recommended outcome of a particular case, such as the forwarding endorsement on the report of an administrative board. Although violations of a general order, or of any other order for that matter, may end up in the military justice system, an order itself is a military entity, not "correspondence dealing with certain aspects of military justice" (unless, of course, the order operates in some qualifying manner upon individual cases or the military justice system in general).

We consider the distinction between "issuing" a directive and "signing" it to be crucial to reaching the correct result in cases such as this, and we consider the definition of "issuing authority" in the Department of the Navy Directives Issuance System instruction to be in consonance with Article 92, Uniform Code of Military Justice (10 U.S.C. § 892), as explained in paragraph 16c(1), Part IV, Manual for Courts–Martial, United States, 1984. The following excerpt from *United States v. Marsh*, 3 U.S.C.M.A. 48, 11 C.M.R. 48 (1953), pinpoints the distinction:

> Undoubtedly, under a proper factual situation an intermediate may, by placing his authority behind the order, become the one whose order is violated. But to do this, the intermediate officer must have the authority to issue such an order in his own name and it must be issued as his, not as the representative of the superior. There were two orders and a standing operating procedure offered in evidence and each carried the command line "by command of General Hodge." *The whole pattern of the procedure was predicated on the theory that the Commanding General was issuing the order through his staff section* and in the instant case we have that normal procedure. Major Hatfield, Post Adjutant of Fort McPherson, testified that Captain Sikes was the confinement officer, and his authority was limited to orders which pertained to the confinement facilities. Had he been issuing an order relative to those matters, it would not have carried a command line, it would have been issued in his own name.

(Emphasis supplied.)

General orders and regulations are issued under the functional title of the commander but, like other orders prosecuted under Article 92, have long been held not to constitute direct, personal orders of the commander to individuals. *See United States v. Doyle*, 9 U.S.C.M.A. 302, 26 C.M.R. 82 (1958). If even a direct personal order, violation of which is punishable by five years' confinement, or death in time of war, may be issued via a subordinate, as in *Marsh*, there is certainly no reason in principle or policy for holding that an impersonal order in the nature of a "standing order" (*see United States v. Ochoa*, 10 U.S.C.M.A. 602, 28 C.M.R. 168 (1959)) must be issued over the signature of the commander personally.

■ We are fully cognizant that "by direction" authority may be used in different ways and with different significance. Although, in the Naval Service, orders convening courts-martial are required by secretarial regulation to be personally subscribed by the convening authority, and "indorsements" referring charges for trial by court-martial are customarily signed in the same manner, appellate tribunals have held that the signatures effectuating even these absolutely non-delegable functions may be those of authorized subordinates. *United States v. Johnson*, 10 C.M.R. 579 (CGBR 1953); *United States v. Haimson*, 14 C.M.R. 268 (ABR 1954), *aff'd*, 5 U.S.C.M.A. 208, 17 C.M.R. 208 (1954). *See also* Appendix 6a(1) [Note 2] and R.C.M. 601(e)(1) *Discussion*, Manual for Courts–Martial, United States, 1984. In such situations, the *decisional* authority, which is discretionary in nature, remains with the commander, while the *signature* authority, which is delegated, is wholly ministerial in nature. Where the law does not require

the decisional authority to remain with the head of the activity, the decisional authority may be, and ordinarily is, delegated in accordance with what are considered to be sound principles of command, although the ultimate responsibility for the manner in which the delegated authority is exercised rests with the commander. A "Chief of Staff" or "By direction" signature is, therefore, potentially ambiguous in that it may connote either a ministerial signing or a genuine exercise of delegated discretionary, decision-making authority by the signatory.

■ We have been unable to locate any authority on the point, but we assume, without deciding, for purposes of this case, that the discretionary, decision-making authority embodied in the issuance of a general order or regulation is non-delegable; in other words, that the commander must at least personally know and approve of the contents of any lawful general order or regulation issued under his or her command line during his or her incumbency. We do hold, however, that it is not necessarily fatal to the validity of a general order or regulation that it was signed by someone other than the commander, so long as the person who did sign it was properly authorized to do so.

■ Whether or not the Chief of Staff was expressly authorized to sign the base order allegedly violated in this case for the Commanding General, the Government in cases such as this is aided by a presumption of regularity, which, unless overcome by evidence to the contrary, is sufficient to support a finding that the order was duly signed by a person authorized to sign it. *United States v. Johnson*, 10 U.S.C.M.A. 630, 28 C.M.R. 196 (1959); *United States v. Masusock*, 1 U.S.C.M.A. 32, 1 C.M.R. 32 (1951). Beyond that, if, as we have assumed for purposes of this case, the commander was required to know and approve of the contents of the order, the presumption of regularity, again, unless overcome by evidence to the contrary, would also be sufficient to support a finding that the commander personally had the requisite knowledge and had given the requisite approval. *United States v. Haimson*, 14 C.M.R. at 273. In the instant case, resort to the presumption of regularity is not even necessary, because the appellant's pleas of guilty establish the facts essential for conviction in the absence of either contrary statements on his part or indications on the face of the record that the pleas are improvident. As long as a general order may be signed by someone other than the commander personally, as we have held, the appellant's provident pleas of guilty admit that the Chief of Staff, who signed it, was a person authorized to do so, and, if required, that the Commanding General personally was aware of and had approved the order.

The findings of guilty and the sentence, as approved on review below, are affirmed.

Chief Judge BYRNE, Senior Judge MCLERAN, Judges WILLEVER, JONES, STRICKLAND, HILTON, and RUBENS concur.

Senior Judge ALBERTSON (concurring in part and dissenting in part):

I concur as to the majority's affirmance of the findings of guilty to all charges and specifications except as to the findings of guilty to Charge II and its specification, violation of a general order.

I dissent because I believe the officers authorized to issue general orders or regulations as described in Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, and as explained in paragraph 16c(1)(a), Manual for Courts–Martial, United States, 1984, must personally sign general *punitive* orders or regulations. In appellant's case, it is unclear to me whether the chief of staff was delegated authority to merely perform a ministerial function of signing or a "legislative" function of issuing. The authority to legislate criminal (penal or punitive) statutes is non-delegable. *United States v. Grimaud*, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911); *see United States v. Curtis*, 28 M.J. 1074, 1105 n. 16 (NMCMR 1989) (Albertson, J., dissenting). Penal statutes must be strictly construed. *United States v. Wiltberger*, 18 U.S. 76, 5

Wheat (U.S.) 76, 5 L.Ed. 37, 42 (1820); *United States v. LaCour*, 17 C.M.R. 559 (ABR 1954). To permit a presumption of regularity based upon a signature of someone other than the flag or general officer in command, as the majority's view would, shifts to an accused the burden of producing evidence that the officer exercising general court-martial jurisdiction did not personally know about or authorize a punitive regulation issued under his command line. Such a burden to rebut the presumption of regularity is too heavy a burden to place upon an accused, particularly in light of the fact that a punitive regulation need not be recently issued to be effective. *Cf. Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228, *reh'g denied*, 355 U.S. 937, 78 S.Ct. 410, 2 L.Ed.2d 419 (1958). The general or flag officer's personal signature on the order or regulation would negate the need for a presumption of regularity and relieve the defense of an unfair burden.

Additionally, the disparity in maximum punishments authorized for violation of Article 92(1) and Article 92(2) offenses is evidence of the seriousness with which the decision to promulgate general orders/regulations should be treated. Nothing derogates from the fact in appellant's case that his possession and consumption of alcohol in the barracks in violation of the regulation in question was a violation of an other lawful order properly issued and for which appellant was subject to 6 months confinement, ⅔ forfeitures of pay per month for 6 months, reduction to pay grade E–1 and a bad-conduct discharge. *Cf. United States v. Brown*, 8 U.S.C.M.A. 516, 25 C.M.R. 20 (1957).

I would therefore set aside the findings of guilty to Charge II and its specification and dismiss Charge II and its specification. Upon reassessment of the sentence, I would affirm the sentence approved on review below. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986).